## Case No. 1,985.

### In re BROWN.

[2 Story, 502; 6 Law Rep. 508; 10 Hunt, Mer. Mag. 377.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1843.

NEGOTIABLE INSTRUMENTS — NATURE AND REQUISITES — CHECKS AND BILLS OF EXCHANGE DISTINGUISHED—PRESENTMENT—PAYMENT—NOTICE—DAYS OF GRACE.

1. The characteristics, which distinguish checks from bills of exchange, are, that checks are always drawn on a bank or banker; that they are payable immediately on presentment and without days of grace; that they are not presentable for acceptance, but only for payment. The want of due presentment of a check and of notice of the non-payment thereof, only exonerates the drawer in so far as actual damages have thereby resulted to him.

[Cited in Re Smith, Case No. 12,990; Bull v. First Nat. Bank, 123 U. S. 111, 8 Sup. Ct. 64.]

[See Sherman v. Comstock, Case No. 12,764; Merchants' Nat. Bank of Boston v. State Bank of Boston, 10 Wall. (77 U. S.) 604; McDonald v. Stokey, 1 Mont. 388.]

2. A check is an appropriation of the drawer's funds in the hands of the banker, to the amount thereof, and consequently the drawer has no right to withdraw them before the check is paid.

3. If the drawer of a check sustain no damage by want of due presentment and notice, and the non-payment of the check arise from his own default, or from his want of funds, he is liable to the holder for the full amount of the check.

4. The holder of a check is not bound to receive part payment thereof, even if the bank be willing to pay it in part. He has a claim to the entire sum named therein.

5. In cases of a fluctuating balance between the drawee and the drawer of a bill of ex-

---

[1] [Reported by William W. Story, Esq. 10 Hunt, Mer. Mag. 377, contains only a partial report.]

change, or where a drawer draws in the belief that he has funds, or in the reasonable expectation that he shall have funds to meet it, he is entitled to notice of its non-payment; but otherwise, he is not.

6. Certain checks were drawn in favor of C by Green, the general agent for D, as collateral security for a promissory note, made by them, payable to D for his accommodation, which said note was discounted at the Granite Bank of Marblehead, and not being paid by D, was taken up by C. The checks, which were for $703.50, $726.52, respectively, were made payable to C or order, on two certain days, and were presented on those days, but not on the last days of grace; but during the three days of grace, the drawer had not sufficient funds in the bank, on which they were drawn, to pay either, although there was a small balance there in his favor. It was *held*, that the checks were properly presented, and were not entitled to days of grace; that D was not entitled to notice, and that, even if the checks had not been properly presented, and notice had not been properly given, D was liable for money paid by C at his request and for his use; that the fact that they were payable at a certain day, and not on demand, did not change their nature from checks to bills of exchange, and that Green, being the general agent of D, was fully empowered to waive the presentment of the checks and the giving of notice.

[Cited in Re Smith, Case No. 12,990.]

[Adjournment from the district court of the United States for the district of Massachusetts.

[In bankruptcy. Petition by the assignee to expunge a claim from the list of proved debts, and petition by creditor praying payment of the claim so proved. The case was adjourned from the district court on an agreed statement of facts, and the court certified the adjourned question in favor of the creditor.]

Wm. Courtis & Co. proved as a debt against the estate of Ephraim Brown, a bankrupt, the following checks:

"Granite Bank. 703 dolls. 50 cts. Boston, April 18th, 1841. Pay to W. Courtis & Co., 18th May, or bearer, seven hundred three dollars thirty cts. To the Cashier. Ephraim Brown, by J. W. Green."

"Granite bank. 726 dolls. 52 cts. Boston, April 18th, 1841. Pay to W. Courtis & Co., 10th June, or bearer, seven hundred twenty-six dollars fifty-two cts. To the Cashier. Ephraim Brown, by J. W. Green."

Whereupon, Henry Winsor, assignee of Ephraim Brown, filed a petition to the district judge to expunge the claim of W. Courtis & Co. from the list of debts, proved against the bankrupt's estate, and setting forth the following specification of the reasons to support the petition: "1st. He says, that the papers, set forth in the said T. Courtis's proof, as checks of said E. Brown, are, in fact, bills of exchange, and that he, as drawer, is entitled to all the rights of drawers of such bills. 2nd. That whether said papers are to be considered as checks or bills, the said E. Brown was, in the circumstances of this case, entitled to expect, that they should have been duly presented for payment to the drawee, and demand

made, and that notice of their dishonor should have been duly given to said E. Brown; and he avers, that such demand and notice have not been made and given. John Codman, Counsel for said Assignee."

Afterwards Thos. Courtis, of the firm of W. Courtis & Co. filed a petition to the district judge, which, after setting forth the above stated facts, proceeds as follows: "And your petitioner further represents, that, in the course of making preparation to meet and contest the allegations of the said assignee in the premises, to wit, on the sixteenth day of December instant, your petitioner discovered evidence, tending to prove the following facts, which your petitioner avers and alleges, viz., that on the eighteenth day of April, 1841, one Joseph W. Green, then, and for a long time previous, the duly authorized agent of the said bankrupt, at the request of the said bankrupt, borrowed of the said William Courtis, for the use and accommodation of the said bankrupt, the negotiable promissory note of the said William Courtis & Co., in the words and figures following, to wit, '$1,450. Boston, April 18th, 1841. For value received, we promise to pay Ephraim Brown, or order, fourteen hundred and fifty dollars in four months. (Signed.) William Courtis & Co.' Which said promissory note was delivered by the said Green to the said bankrupt, who indorsed and procured the same to be discounted at the Grand Bank in Marblehead, the proceeds of said discount being appropriated by the said Brown to his own use. And your petitioner further alleges, that the said promissory note, at its maturity, was not paid by the said bankrupt, but was paid by the said William Courtis & Co. for the use and accommodation of the said bankrupt, and the amount so paid, together with interest thereon, is still justly due from the said bankrupt to the said William Courtis & Co. And your petitioner further alleges, that at the time when the said promissory note was made and delivered to the said Green for the said bankrupt, the said Green, in the name and behalf of the said bankrupt, drew the checks described in said proof, as a security to the said William Courtis & Co. against their liability upon the said note; and to this end the said checks were made payable prior to the maturity of the said note, and the interest on each moiety of the sum expressed in said note, from the day on which each check was payable, to the day of the maturity of the said note, being discounted, the said checks were drawn accordingly. And your petitioner further alleges, that, on the day, when the said checks were drawn and delivered, the said bankrupt had no right to draw the same, or to expect that the same would be paid; and that on the days when the said checks respectively became due, the bank, on which they were drawn, could not, and did not

pay the same, for want of funds of the said bankrupt; and that the said Green, after the said checks were made and delivered, and before either of them became due, still acting in that behalf, as the duly authorised agent of the said bankrupt, informed the said William Courtis, that the same would not be paid, and requested him not to present the same at the bank on which they were drawn."

The case was adjourned from the district court into the circuit court, upon the following agreed statement of facts:

"It is agreed by the parties, that the checks, recited in the said proof of debt, were drawn by an authorised agent of the bankrupt in his name and on his behalf. At the opening and close of the days, on which the said checks were drawn and delivered to the said William Courtis & Co., the balance on the books of the bank, on which they were drawn, to the credit of said Brown, was $30.89. The said check for $703.50 was presented by a servant of Courtis & Co., at the counter of the Granite Bank, during business hours, on the eighteenth day of May, 1841, and the teller replied, 'There is nothing here.' The said check for $726.52 was presented at the counter of the said bank twice in business hours, by an agent of the said Courtis & Co., on the tenth day of June, 1841, and the teller replied each time, 'It is not good.' On the next day, the servant of Courtis & Co. again presented both checks at the counter of the said bank, in business hours, and inquired if any money had been deposited to meet those checks, and the teller replied, 'There has not.' In point of fact, there was a balance to the credit of the bankrupt on the books of the bank on the 18th, 19th, 20th, and 21st days of May, of $6.11, and on the 10th, 11th, 12th, and 13th days of June a balance of $20.72. And the said creditors introduced the depositions of Joseph W. Green and Robert H. Darrah. At the request of the parties, it is ordered by the court, that the questions, whether upon the facts agreed by the parties, and stated in the said depositions, the proof of debt made by the said Courtis & Co. et al. or any part thereof, ought to be expunged; and whether the said Courtis et al. are entitled to any, and what relief, under their petition, filed since the making of said proof, be and the same are hereby adjourned into the circuit court, to be then heard and determined. Francis Bassett, Clerk of the Court."

John Codman, for assignee.

W. W. Story (with whom was G. T. Curtis), for the Messrs. Courtis.

Mr. Codman, for the assignee, argued as follows:

The evidences of debt filed by Messrs. Courtis are not checks, but inland bills of exchange; and the fact, that the time of payment was future and certain, distinguishes these instruments from checks; Cruger v. Armstrong, 3 Johns. Cas. 9; Bayley, Bills & N. 236; Merchants' Bank v. Spicer, 6 Wend. 445; Mohawk Bank v. Broderick, 10 Wend. 304; Story, Bills, § 63. These papers, then, being bills of exchange, the drawer of them is entitled to insist that they should be duly presented, and notice of their dishonor given to him. Id. §§ 251, 346, 400. Nor does the fact, that there was a deficiency of funds in the bank to meet these checks by any means excuse demand and notice, for so long as there were any funds, however inadequate, the drawer is entitled to his strict right of a proper presentment and notice. Bayley, Bills & N. 316, 317; Story, Bills, §§ 252, 311; Sutcliffe v. McDowell, 2 Nott & McC. 256; Blackhan v. Doren, 2 Camp. 504; Legge v. Thorpe, 12 East, 176; Rickford v. Ridge, 2 Camp. 539; Edwards v. Moses, 2 Nott & McC. 433. In this case, the checks were drawn bona fide, and the testimony of Mr. Green shows, that he had an immediate expectation of funds in the bank in order to meet them. No proper demand was made. It was not sufficient, that the checks were presented on the day named therein, for they were not due until the days of grace had expired. By the Massachusetts Revised Statutes (chapter 33, § 5), grace is to be allowed on all bills and orders for money payable at a future day certain. This statute, therefore, controls these checks, inasmuch as being payable at a future day certain, they come within its terms. Nor was proper notice given; for the mere fact, that the drawer knew that he had no funds in the bank does not amount to notice. It is a strict right to which Brown was entitled, by the principles, which govern bills of exchange. If any weight is to be given to the waiver, by Green, of presentment and notice, it can only apply to the first check; for it was made nearly a month before the second became due, and, as he speaks of being in funds in a few days, he could only have been speaking of the first.

Mr. Story, for the plaintiffs, said:

1. These were checks drawn by Green, as agent of Brown, within the scope of the authority expressly conferred upon him by his principal. Green is, therefore, bound to pay them, whether he knew, that they were drawn or not. The whole evidence shows, that Green's authority was unlimited, and that he was held out to the public by Brown as his general agent. This by the very first principles of agency, renders the principal liable for all his acts, unless they were known to exceed his authority. If Green, therefore, merely pretended to have an authority, which he had not, he would render his principal liable to all persons trusting in good faith to such a pretence. Third persons are not bound to scrutinize the powers of general agents, but they may trust to

their apparent authority. Story, Ag. § 133. Brown and Green are, therefore, to be considered as one person, in this transaction.

2. These were merely checks, payable on a future day certain. They are not promissory notes, nor bills of exchange, and are not to be governed by the same exact rules. They are merely orders upon the bank to pay the sums named therein, and are not a promise to pay, but a draft for a debt due. The fact, that the day of payment is fixed and certain, does not alter the character of these instruments, so as to make them bills of exchange; it is merely directory, and by no means in the nature of a condition precedent, as would have been the case if the instruments had been notes. These checks, therefore, not being bills of exchange, or promissory notes, are not entitled to days of grace, any more than checks payable on demand; and presentment on the days specified therein was proper and sufficient. If there were any doubt about this point, the invariable custom of merchants and bankers would determine it to be as stated.

3. A check, however, bears an analogy to a note, in some respects. Brown may be considered as the maker, and the bank as the place of payment. Now, the holder of a note is not bound to make a presentment thereof, before he can bring an action against the maker, where the time and place of payment are specified; for the action itself is presentment and notice. Nor need presentment and notice be proved, in order to render the maker liable; it is only a matter of defence by the maker, that he was ready and present at the place, and had the money there to pay the note. The maker of these checks, then, must prove, that he had funds at the bank to meet them when due, and that he was ready to pay them, or he will still be liable, although there should have been no presentment or notice. The agreed statement of facts finds, however, that he had not funds sufficient to pay these checks at the bank. If the maker of a note sustain any injury by non-presentment, the burden of proof is upon him to show it; and if he do show it, and it be susceptible of estimation, he can recover damages pro tanto only. Now, in the present case, there is no pretence that any injury resulted to Brown from want of presentment and notice. On the contrary, the non-presentment was a benefit: it postponed the claim.

4. These checks also resemble in some respects, bills of exchange. The holder of a bill, however, is generally bound to make presentment thereof and give due notice of its dishonor. But this is only a general rule, and the exception is, that where there are no funds in the drawee's hands, and no promise or obligation by the drawee, authorising the drawing the bill, no presentment or notice is necessary. The reason of

the rule is, that injury may accrue to the drawer, from non-presentment and want of notice. The reason of the exception is, that in cases where it applies no injury can accrue. Presentment in the present case would have been useless, for there were not sufficient funds of the drawer at the bank to pay either check, and the fact, that there was a small sum there in his favor, does not make a presentment necessary; because a check, or bill of exchange, or note, is an entirety, and the holder thereof is not bound to receive a part. Nor would the bank be bound to pay a part, as the holder would not, in such a case, be willing to part with the evidence of debt. Nor was notice necessary; for Brown knew, or ought to have known, that he had no funds in the bank to pay the checks, and, therefore, he knew, that they were not paid. Knowledge is notice. Besides, right to presentment and notice belongs to indorsers only, and in respect to them only does the want thereof afford an absolute presumption of injury. But, as between drawer and drawee, the presumption of injury is only primâ facie, and may be rebutted by evidence that no injury was, in fact, sustained. Bickerdike v. Bollman, 1 Term R. 405; Rogers v. Stephens, 2 Term R. 713; Legge v. Thorpe, 12 East, 171; Story, Bills, § 367. The only cases in which presentment or notice have been held to be necessary in the case of a bill of exchange drawn upon a bank or banker, not having sufficient funds of the drawer to meet it, are cases where there was a fluctuating balance, and where the drawer drew upon the fair supposition that he had funds, or that there would be funds to meet it by the time that it was due; and the reason for requiring notice is, that otherwise the drawer would suppose the bill to be paid. But that is not this case.

5. If these were inland bills of exchange, Brown was the drawer and the bank the acceptor. Now, Brown had no right to draw upon the bank without having sufficient funds there, or without a reasonable expectation that there would be funds there when the bills were due. As Brown had no funds there, and as no expectation is shown to have existed, on his part, that funds would be there, the drawing of these checks was a fraud upon the drawer, and absolves the holder from presentment and notice.

6. Besides, there was an express waiver of presentment and notice by Green, and he was fully authorized as the agent of Brown to make such a waiver. In respect to the equity of the case, we would say, that the right to presentment and notice is a mere technical right, the non-compliance with which worked no injury, and that to set up such a right to avoid the payment of a just debt, which has never been paid, is inequitable. A presentment was made on the day on which the checks were supposed by both parties to be due, and, as we con-

tend, they were. Green's waiver refers to this day. And yet, by a mere technical objection, Brown claims to be absolved from paying a debt, which he justly owes, and in respect to which, as far as he knew at the time, Messrs. Courtis & Co. did all that was necessary. If a court of law shrink from rigidly enforcing this technical right, and introduce exceptions, where no injury results, will not a court of equity insist, that injury shall be shown as a basis of defence?

STORY, Circuit Justice. I cannot say, that I entertain any doubt upon either of the questions, which have been argued in this case, although they are presented under somewhat novel circumstances. The argument for the assignee resolves itself into these points: (1). That these instruments, although in the form of checks, are, in fact, inland bills of exchange, and governed by all the rules thereof, as to presentment and notice. (2). That here no due notice was given to the drawer of the presentment and dishonor of these checks; and that the circumstances, relied on as a waiver, do not justify the conclusion. (3). That the facts, relied on in the petition of the Messrs. Courtis, do not change the legal posture of the case, or entitle them to any relief in equity.

In respect to the first point, the argument pressed is, that checks are always, and properly, payable on demand, and that when payable at a future time, they become, to all intents and purposes, inland bills of exchange. But I am not, by any means, prepared to admit the validity or force of this distinction; and no case has been cited, which, in my judgment, satisfactorily establishes it. A check is not less a check, because it is post-dated, and thereby becomes, in effect, payable at a future and different time from that on which it is drawn or issued. This is sufficiently apparent from the case of Allen v. Keeves, 1 East, 435. That it may be declared upon as a bill of exchange, is no proof that it may not also be declared upon as a check. In many cases they are identical in their legal results; but by no means in all. Mr. Chitty very properly says, that a check nearly resembles a bill of exchange; but (he adds) it is uniformly made payable to bearer, and should be drawn upon a banker, or a person acting as such. Chit. Bills (8th London Ed. 1833) c. 11, p. 545. I agree, that it nearly resembles a bill of exchange; but "nullum simile est idem." It is commonly, although not always, made payable to the bearer; but I conceive it to be still a check, if drawn on a bank or banker, although payable to a particular party only by name, or to him or his order. It is usually, also, made payable on demand; although I am not aware that this is an essential requisite. The distinguishing characteristics of checks, as contradistinguished from bills of exchange, are (as it seems to me) that they are always drawn on a bank or banker; that they are payable immediately on presentment, without the allowance of any days of grace; and that they are never presentable for mere acceptance; but only for payment. Mr. Chancellor Kent, in his learned Commentaries (3 Kent, Comm., 4th Ed., 75), says: "A check upon a bank partakes more of the character of a bill of exchange than of a promissory note. It is transferable like a bill of exchange. It is not a direct promise by the drawer to pay; but it is an undertaking, on his part, that the drawee shall accept and pay, and the drawer is answerable only in the event of the failure of the drawee to pay." But he has more fully explained his real meaning in a note to the index to the fourth edition of his Commentaries (4 Kent, Comm., 4th Ed., p. 549, note), which I adopt with entire confidence, as expressive of my own opinion: "A check (says 'he) differs from a bill of exchange in this, that it has no days of grace, and requires no acceptance distinct from' prompt payment. The drawer of a check is not a surety, but the principal debtor, as much as the maker of a promissory note. The check is the acknowledgment of a certain sum due. It is an absolute appropriation of so much money in the hands of his banker to the holder of the check, and there it ought to remain until called for, and unless the drawer actually suffers by the delay, as by the intermediate failure of his banker, he has no reason to complain of delay not unreasonably protracted. If the holder does so unreasonably delay, he assumes the risk of the drawee's failure, and he may, under circumstances, be deemed to have made the check his own, to the discharge of the drawer. But this is quite distinct from the strict rule of diligence applicable to a surety, in which light stands the endorser, who has a right to require diligence on the part of the holder, to relieve him from responsibility. It is true, however, that there is so much analogy between checks and bills of exchange, and negotiable notes, that they are frequently spoken of without discrimination." S. P. 3 Kent, Comm. (5th Ed.) s. 44, p. 104, note; Little v. Phoenix Bank, 2 Hill, 425; Kemble v. Mills, 1 Man. & G. 757. The case of Cruger v. Armstrong, 3 Johns. Cas. 5, does not inculcate any different doctrine, when correctly considered. And the case of Conroy v. Warren, 3 Johns. 259, expressly distinguishes between checks and bills of exchange, and puts the doctrine of the necessity of presentment for payment upon its true and reasonable ground,—whether any damages have been sustained by the drawer by the delay or not; and I conceive that the point, as to notice of the dishonor of a check, would mainly turn upon similar considerations.

We all know, from the history of inland bills of exchange, that, originally, they were not entitled to days of grace; and that days of grace were first established, as ap-

plicable to them, by the statutes 9 & 10 Wm. III. c. 17, and 3 & 4 Anne, St. 2, c. 9. 2 Bl. Comm. 467. In Massachusetts, days of grace were not formerly allowed upon promissory notes, payable at a future time (Putnam v. Sullivan, 4 Mass. 45; Jones v. Fales, Id. 245); and the like rule was supposed to apply to inland bills of exchange, or at least, the contrary was not established. This rule in Massachusetts was altered by the statute of 1824, c. 130, and by the Revised Laws of 1835, St. 12, c. 33, §§ 5, 6, which allow days of grace upon all bills of exchange, payable at sight, or at a future day certain, and on all promissory negotiable notes, orders, or drafts, payable at a future day certain. But no mention whatsoever is made in either statute of checks; but they are silently left to the known rules, practice, and usages of banks, which I believe to be invariable, never to accept them prior to payment, and always to pay them on presentment on or after the day stated for payment by the date, or upon the face of the check. Thus, if a check be dated on the 1st of December, and be payable on the 10th of December, it is presentable on the latter day, and on presentment on that day, it will be paid by the bank. It is never presented for acceptance, and no days of grace are ever allowed upon it. In short, it is always treated as payable on the very day designated as the day of payment. If it be asked, what is the reason of all this? The true answer is, that it is the usage of banks, and the understanding of the parties to the check, and being the constant habit of business, it becomes, like all the other usages of merchants, the lex et norma, by which to expound the contract. The parties have, in the present case, used the common form of a bank check; and by so using it, they impliedly authorize the bank to treat it as a check, and pay it as a check, payable on the very day, on which it is dated, or on which it purports to be payable, without any grace. The words of both these instruments are precisely alike, except as to sums and times of payment. The first one is; "Granite Bank, Boston, April 18, 1841. Pay to W. Courtis & Co., 18 May, or bearer, seven hundred and three dollars and 50--100. Ephraim Brown, by J. W. Green. To the Cashier." The second is dated on 18th of April, and is to "Pay to W. Courtis & Co., 10 June, or bearer, seven hundred and seventy-six dollars 52–100." Signed in the same manner, and addressed in the same way "To the Cashier" of the Granite Bank. No one can doubt, that it is entirely competent for the parties to agree, that an instrument shall be treated to all intents and purposes as a check, and to have all the attributes and incidents thereof, and to declare, that it shall not be deemed a bill of exchange. In fact, by the forms here adopted, the parties do so declare; and, as I understand it, the banks uniformly act upon this understanding, and always pay such checks upon the day fixed for payment, without any allowance of grace, if they have funds; and this is done without any suspicion, that it is a misuser or misapplication of the funds of the drawer.

I am aware of the case of Brown v. Lusk, 4 Yerg. 210, in which it was held, that a check, drawn in Nashville, on the Branch Bank of the United States at Nashville, on the 13th of December, 1827, payable to A. B., or bearer, on the 14th of January following, was held to be an inland bill of exchange, and entitled to the days of grace. This case was decided in the absence of Mr. Chief Justice Catron; and not only was no authority cited for the position; but the very citation from Chitty on Bills, which was relied on to support it, distinctly shows, that there is a marked distinction between checks and bills of exchange. Mr. Chitty there says (Chit. Bills, 7th Am. Ed., p. 322; S. P. Id., 8th London Ed. 1833, c. 11, p. 546): "They (checks) are not due before payment is demanded, in which they differ from bills of exchange and promissory notes, payable on a particular day." Now, the most that this position proves is, that checks are not governed in all cases by the same rules as bills of exchange and promissory notes. They are not payable until presentment. But how does this show when they are presentable; or that they may not be made payable on any other day certain than the day of the date? Or that days of grace are to be allowed upon them, if payable on a day certain? The learned judge, who delivered the opinion of the court in Brown v. Lusk, added: "They (checks) are appropriations of money in the hands of a banker, and are payable on presentment." In this remark, he but followed out what was intimated by Lord Kenyon in Boehm v. Sterling, 7 Term R. 423, 429, and has been since often recognized as sound law. Cruger v. Armstrong, 3 Johns. Cas. 5, 7, 9; Conroy v. Warren, 3 Johns. 259. But we all know, that, at law, neither a bill of exchange, until acceptance, nor a promissory note, is any appropriation of the money of the drawer or maker in the hands of any one. In truth, a check is an instrument sui generis, and is construed exactly as the parties intend it. It is supposed to be drawn upon funds in the hands of the bank or banker, and it appropriates the amount to the holder of the check. And I agree with Lord Kenyon in holding, that the drawer cannot honestly alter the state of his accounts with the bank or banker, so as not to leave in his hands sufficient to pay the check on the very day on which it is presentable and payable; for that would be a fraudulent misapplication of the appropriated funds.

The like distinction between checks and bills of exchange was stated by Mr. Justice Sutherland in Murray v. Judah, 6 Cow. 490. He there said. "As a general rule, therefore, a check is not due from the drawer, until

payment has been demanded of the drawee, and refused by him. As between the holder of a check and an indorser or third person, payment must be demanded within a reasonable time. But as between the holder and maker, or drawer, a demand at any time before suit brought is sufficient, unless it appear, that the drawee has failed, or the drawer has in some manner sustained injury by the delay." The same doctrine has been fully recognised in other cases. Mohawk Bank v. Broderick, 10 Wend. 304, 306, 13 Wend. 133; Cruger v. Armstrong, 3 Johns. Cas. 5; Conroy v. Warren, 3 Johns. 259. It is a natural, even if it be not a necessary, consequence of the fact, that a check is an appropriation of the funds of the drawer in the hands of the bank or banker to the amount of the check; and consequently, the drawer has no right to withdraw the same. And if the drawee, upon the presentment, refuses to pay the check, because he has no funds, then the drawer is not injured; and if he has funds, and refuses to pay, then, if the bank is still in good credit, as the drawer has sustained, and can sustain no loss, there is every reason to hold him liable therefor. Every check is prima facie presumed to be given for value received by the drawer; and if, by reason of the want of due presentment or want of due notice of the dishonor, he is to be totally exonerated, he pockets both the original consideration and his funds in the hands of the bank or banker. In such a case, can it be said, with truth or justice, that he is to be enriched at the expense of the holder of the check? Or, that he shall not be deemed to hold the money, as money had and received for the use of the holder, either because he had no funds in the bank, or because he still retains those funds, appropriated to the use of another, for his own use? I am aware, that Mr. Justice Cowen, in his elaborate opinion in Harker v. Anderson, 21 Wend. 372, has endeavored to support the opinion that a check is to be deemed, to all essential purposes, to be a bill of exchange, and, therefore, that all the rules applicable to the latter are of equal force in relation to the former. Notwithstanding the array of authorities, so fully and learnedly brought forth by him in support of that opinion, my own judgment is, that they wholly fail of the purpose. It appears to me to be a struggle on the part of the learned judge to subject all the doctrines, applicable to all negotiable instruments, to some common and uniform standard. I hope and trust, that such an effort will never prevail. In my judgment, it is far better that the doctrines of commercial jurisprudence should, from time to time, adapt themselves to the common usages and practices and understanding of merchants, and vary with the varying courses of business, so as at once to subserve public convenience, and to mould themselves into the common habits of social life, than to assume any artificial forms, or to regulate, by any inflexible standard, the whole operations of trade and commerce. As new instruments arise in the course of business, they should be construed so as to meet and accomplish the very purposes for which they were designed by the parties, and not to defeat them. Checks are as well known now as bills of exchange, as a class of distinct instruments in commercial negotiations; and he who seeks to make them identical in all respects with bills of exchange, may unintentionally be introducing an anomaly, instead of suppressing one. Upon the whole, my judgment is precisely in coincidence with that of Mr. Chancellor Kent, already cited on this subject. I hold, that the instruments in the present case are strictly checks, and subject to all the incidents thereof; that they were payable on the very day on which payment was upon their face demandable, without any days of grace; and that both parties intended throughout that they should be treated as checks, and that they should be paid by the bank on the very day designated, or at any reasonable time thereafter.

But, assuming for the purposes of the argument, that this is not entirely correct, (which I maintain, however, to be entirely correct,) still, in this case, in my judgment, the checks are a good debt against the bankrupt. And this for two reasons, either of which would be conclusive. In the first place, it is manifest, that these checks were drawn without the drawer having any right to draw. He had no funds in the bank at the time, when the checks were due and payable, or, indeed, for aught that appears, at any time since, to discharge them or either of them. Now, in the case of a check, I take it to be clear, that the drawer impliedly engages, that at the time, when the check is due and payable he has, and will have then, and at all times thereafter, sufficient funds in the bank to pay the same, upon presentment; and by the draft he appropriates those funds absolutely for the use of the holder. Now, the bank is not bound to pay, unless it is in full funds; and it is not obliged to pay, or to accept to pay, if it has partial funds only; for it is entitled to the possession of the check on payment; and, indeed, in the ordinary course of business, the only voucher of the bank for any payment is the production and receipt of the check, which the holder cannot safely part with, unless he receives full payment, nor the bank exact, unless under the like circumstances. The holder is not bound to accept part payment, even if the bank is willing to pay in part; for he has a claim to the entirety. Now, the circumstance, that the drawer had no right to draw these checks, and had no funds there at any time to pay the same, seems to me decisive, that he has no right to complain of the want of due pre-

sentment, or of the want of due notice. Not of the want of due presentment; for the checks were demandable, not merely on the days on which they were respectively due, but, as against him, at any reasonable time afterwards; and he ought to have had funds at all times in the bank to pay the checks after they were due. Not of the want of notice; for as he never had any funds in the bank to pay the checks, he had no right to believe they would be paid, and, strictly speaking, his conduct was an actual or constructive fraud upon the holders. In both views, the case of Conroy v. Warren, 3 Johns. 259, is a direct authority to the purpose. And it may be further added, that it was held in that case, in which I entirely concur, that if the drawer sustains no damage by want of due presentment or due notice, and the nonpayment of the checks arise from his own default, or from his want of funds, he is liable to the holder to the full amount of the checks. If the bank had funds, and had failed in the intermediate time, that might have furnished a different ground for defence. It would then be like the case of a note or acceptance, payable at a bank, where the bank had, at the time, funds to pay, and had failed after it became due, and there had not been a due presentment for payment. It appears to me equally clear upon principle and authority, that the drawer is liable in all cases for the dishonor of checks, whether they have been duly presented or not, or whether he has had due notice of the dishonor or not, in all cases where he has sustained no damage on account of the omission.

But it is said, that, in cases of bills due presentment and due notice are necessary whenever the drawer has any funds in the hands of the drawee; and the same reasoning applies to cases of checks. Now, I deny both the premises and the conclusion. In the first place, as I understand it, the true doctrine is this, that, if the drawer has a right to draw, in the belief that he has funds, or in the expectation that he shall have funds at the time of the presentment for acceptance, by reason of arrangements with the drawee, or putting his funds in transitu; then and in such cases he is entitled to due notice. But according to the doctrine now contended for, if the drawer knows, that he has but one dollar in the hands of the drawee, and he has no expectation of any more being added, and has no right to believe, that a bill for more will be honored, he may nevertheless draw a bill on the drawee for ten thousand dollars: and if it is dishonored (as he knows it will be) he is still entitled to strict notice; whereas, if he had not the one dollar in the drawee's hands, he would not be entitled to any notice at all. Now, I do not understand the law to involve any such strange anomaly, not to call it an absurdity. In each case, the same reason applies; the draft is a fraud upon the holder;

and in each case a meditated fraud shall not be sheltered behind a rule intended to protect the innocent and trustworthy. Bickerdike v. Bollman, 1 Term R. 405. The two cases relied on at the bar to establish the opposite doctrine turn upon the very considerations, which I have already suggested. In Hammond v. Dufrene, 3 Camp. 145, the bill was drawn by the party having no funds at the time; but the drawees accepted the bill, and afterwards, and before the bill became due, the drawer paid a larger sum on account of the acceptors; and Lord Ellenborough held, that the drawer was entitled to strict notice of the dishonor, when the bill became due. Why? Because the drawer had a reasonable expectation, that the bill would be accepted (and it was accepted), and that it would be paid at maturity by the acceptors, as he was then in advance for them to a larger amount. In Thackray v. Blackett, 3 Camp. 164, the two bills drawn were accepted, and were dishonored at their maturity by the acceptors; but due notice thereof was not given to the drawer. The bills were, in fact, drawn for the accommodation of the drawer; but before they became due, he had contracted engagements on account of the acceptors to the amount of about 1000l., the bills amounting to upwards of 3,600l. Lord Ellenborough held the drawer entitled to strict notice; but it was upon the ground that there was an open account between the parties, and, therefore, the drawer could not necessarily have been aware beforehand that either of the bills would be dishonored; so that the case was put upon the clear ground that the drawer had a right to draw, and had a right to believe that his drafts would be honored. Indeed, in cases of a fluctuating balance between the parties, this may well constitute a ground upon which, without knowing the exact state of the balance, the drawer may reasonably draw. And this is the very ground upon which the doctrine was put in the case of Orr v. Maginnis, 7 East, 359, where the court thought, that in cases of a shifting balance, notice was necessary, because the drawer could not, or might not know that he was drawing without any right to draw. See, also, Chit. Bills (8th London Ed. 1833) c. 8, p. 358. The same doctrine was upheld in Legge v. Thorpe, 12 East, 171, and was there expounded upon the principles which I have stated.

In the next place, independently of the ground already suggested, there is another one, which in my judgment would be decisive of the whole merits of the case. It is, that there was an express waiver, on the part of Brown, of due presentment and of due notice of the dishonor of the checks, and indeed a request, that they should not be presented when due and payable, as there would be no funds in the bank to meet them. It is true, that this waiver and request were not made by Brown personally; but they

were made through the instrumentality of his general agent, Green. I say his general agent, for such, upon the evidence, he clearly appears to have been: and he was duly authorized by Brown to draw checks on the Granite Bank in his name; and this would incidentally clothe him with fully authority to make any arrangements with reference to the presentment of the checks, for the benefit of his principal. But it is not necessary to put the case upon this narrow ground. It seems clear, that Green was not only the general agent of Brown in his business, which would confer on him this incidental authority; but in point of fact, that he transacted "almost all the business, that was done for him."

Passing from these grounds, either of which would alone dispose of the case, let us now proceed to the consideration of the facts presented upon the petition. It there appears, that these checks were, in fact, given to the Messrs. Courtis, as collateral security for a promissory note, made by them, payable to Brown or order, for the sum of $1450, in four months, at his request, and for his accommodation. That note was discounted for the benefit of Brown at the Grand Bank of Marblehead, and not being paid by Brown at its maturity, it was paid by the Messrs. Courtis to the bank. Here, then, is a clear case of money paid at the request and for the use of Brown; and it is recoverable from Brown's estate as a debt, unless some legal discharge thereof has occurred. Now, the only pretence to allege a discharge is, that the checks above stated have not been duly presented, or due notice given thereof, and therefore, that the drawer is discharged therefrom. Assuming this to be true, and that no action would lie by the holders on these checks against the drawer, what answer is that to the claim for the money paid for the drawer on the promissory note, discounted at the Grand Bank? That is an independent debt, not growing out of the check, but collateral to it. Besides; I understand the true doctrine to be, in all cases where the notes or bills of third persons are taken as collateral security for a debt or indemnity, that the party receiving them is a mere bailee to collect the amount, and like other bailees, where the bailment is for the mutual benefit of the creditor and the debtor, that the bailee is bound only to ordinary diligence for the collection; and therefore, unless some loss has accrued to the bailer, by reason of the want of ordinary diligence in the collection, the bailee is not liable; and his rights as a creditor remain unchanged. This rule is frequently applied in cases of notes and bills of exchange of third persons, taken from the debtor without his indorsement thereon, and also in cases of guaranty. The debtor must show that he has sustained some loss or damage by the omission to collect the notes or bills, or by the want of due presentment, or due notice

of the dishonor of them. Story, Bills, § 372; Chit. Bills, § 372; Id. (8th London Ed. 1833) c. 10, p. 474; Id. p. 529; Bayley, Bills (5th Ed. 1830) c. 7, § 2, pp. 286–290; Oxford Bank v. Haynes, 8 Pick. 423, 428. The rule would seem equally to apply to all cases, where, although the debtor should indorse such notes or bills, yet at the time of the indorsement he knew, or had reason to believe, that they would not and ought not to be paid; for then the indorsement and delivery of the notes or bills would be a mere fraud or imposition upon the creditor. Farmers' Bank v. Vanmeter, 4 Rand. [Va.] 253. If this would be true in the case of the notes or bills of third persons, it must, a fortiori, be true in relation to a check, drawn by the very debtor himself, on a bank where he has no funds, or none but nominal funds, utterly inadequate to pay the debt, and which he knows, therefore, must be dishonored. Any other doctrine would allow the drawer to take advantage of his own gross laches, or gross fraud. In the present case, the drawer would thereby retain in his own hands the amount of the checks, for which he had received a full consideration; and he would escape the repayment of the very money paid for him in good faith by the Messrs. Courtis, without his having sustained any loss or damage by the non-presentment of the checks or the want of due notice of the dishonor. A more equitable defence against a just debt can scarcely be imagined. It is precisely what a court of equity would feel itself bound to redress by the fullest exercise of its powers, by granting full relief to the petitioners, for the amount of the debt paid by them for Brown.

Upon the whole, my judgment, upon all the questions in the case, is in favor of the petitioners; and I shall accordingly direct it to be certified to the district court, (1) upon the first question, that the proof of the debt of the Messrs. Courtis ought not to be expunged, but ought to stand as good and valid; (2) that the petitioners (the Messrs. Courtis) are entitled to be relieved in equity to the full amount of the debt proved by them, for which the checks in the case were given by the bankrupt.