## CHARLES LONGEY v. C. S. L. LEACH AND EMMA S. LEACH.

*Chattel Mortgage. Lien. Trespass. Husband and Wife.*
R. L. ss. 1965, 4158. *Bill of Sale.*

1. L., owning a gray horse, purchased a bay horse of the defendant's wife, and gave her a lien on both to secure the payment. Subsequently he executed a chattel mortgage on the gray horse and some other personalty to the plaintiff, *who had notice of the lien.* Afterwards L. sold the horses to said wife, but delivered them to the husband. They remained in the joint possession of the defendants on a farm owned by the wife, until the gray horse was sold by the husband; *Held,* (a) that the mortgage was superior to the lien; (b) that the mortgagee could maintain an action of trespass, without first exhausting his other security, although his mortgage debt was not due; (c) but that the action could only be sustained against the husband, as the joint possession of the horse was not at law the wife's tort.

2. A mortgagee under a chattel mortgage has a right to take possession of the property at any time, if there is no stipulation to the contrary.
3. R. L. s. 4158 —against selling a chattel without giving notice of lien—has no effect further than its language imports.

TRESPASS and trover for a horse. Heard on a referee's report, September Term, 1884, ROYCE, Ch. J., presiding. Judgment for the plaintiff.

On February 20, 1883, Joseph Longey, owning a gray horse, purchased a bay horse of defendant Emma, and gave her the following writing (the note on demand): * * * " Said horse is to be and remain her property until said note is fully paid; and as a further security for the payment of said note I hereby sell and deliver to said Emma S. Leach one gray horse, now owned by me; and in case I do not pay said note as agreed, and take good and prudent care of said horses, I hereby authorize said Emma S. Leach to take possession of both of said horses at any time she sees fit." This writing was duly recorded in the town clerk's office, March 21, 1883. Said Joseph retained possession of both horses until November 6, 1883, when they were delivered to said C. S. L. Leach, as the property of said Emma, under an arrangement by which the note given for the bay horse was surrendered to said Joseph. The horse. was then kept on a farm owned by said Emma, and occupied by the defendants, until it was sold by said C. S. L. Leach.

On October 15, 1883, said Joseph gave a chattel mortgage of the gray horse, a wagon, and a heifer to the plaintiff, which mortgage was duly recorded. At the time the mortgage was executed the mortgagor informed the plaintiff that the horse was subject to a lien in favor of said defendant; and when the mortgage was filed for record, the town clerk also gave the plaintiff notice of the lien. The note secured by the mortgage was payable in one year from its date.

*C. G. Austin*, for the defendants.

The plaintiff cannot sustain trespass, as he was not entitled to the possession of the horse. R. L. ss. 1966, 1977.

The mortgage is simply a conditional sale; and this being so, it brings the case within the decision of *Hurd* v. *Fleming*, 34 Vt. 169; Jones Ch. Mort. 454. The plaintiff was not a *bona fide* purchaser, having notice of the lien.

Under the statute, R. L. s. 4156, prohibiting the sale of property with a lien on it, and under the decisions as to the effect of notice of a prior unrecorded deed of real estate on the purchaser, it would seem to be absurd to hold that this mortgage should prevail over the lien.

*P. Colman*, for the plaintiff.

The defendant acquired no title which is valid, except as against the mortgagor. R. L. s. 1965; *Hill* v. *Gilman*, 39 N. H. 88. Notice of the lien did not affect the plaintiff's mortgage. *Travis* v. *Bishop*, 13 Met. 304; *Bingham* v. *Jordan*, 1 Allen, 373; *Porter* v. *Dement*, 35 Ill. 478; Jones Ch. Mort. 314. The action is maintainable, although the mortgage note was not due. Jones Ch. Mort. 433, 447; *Woodruff* v. *Halsey*, 8 Pick. 333; *Coles* v. *Clark*, 3 Cush. 399.

The opinion of the court was delivered by

POWERS, J. Our chattel mortgage act makes all mortgages of personal property invalid as to all persons except the mortgagor, unless the mortgaged goods pass into the possession of the mortgagee, or a registry of the mortgage be made in the proper town clerk's office. Hence notice to a mortgagee, who observes the statute, of a prior unrecorded mortgage, is merely notice of a conveyance that the law declares to be inoperative against him.

The bill of sale, therefore, of the gray horse executed by Joseph Longey to the defendant February 20, 1883, though good between the parties to it as a common law mortgage, must be held to be subordinate to the plaintiff's later mortgage executed agreeably to the statute.

Section 4158, R. L., providing a penalty for neglect to give notice of such prior bill of sale, does not have effect further

than its language imports. It does not in terms declare
the validity of such bills of sale as against subsequent con-
veyances if such notice be omitted, although there is great
force in the argument that such is the fair implication of
its terms. The chattel mortgage act is the later statute;
and it has, in fact, in a large measure supplanted former
modes of conveying personal property by way of security;
and was doubtless intended to lessen the chances for fraud
in such conveyances by requiring more formal and more
public evidence of the transfer of title.

The plaintiff's mortgage was duly executed upon good
consideration, and vested in him the title to the horse, sub-
ject to Joseph's right to redeem upon payment of his debt.
If there be no stipulation in the mortgage to the contrary,
the mortgagee had the right at any time to take possession
of the horse, if he saw fit to exercise it. Until this right is
exercised, the possession of the mortgagor is merely per-
missive, and would terminate by transferring it in any
manner that sets the rights of the mortgagee at defi-
ance. Jones Ch. Mort. s. 447. And the mortgagee in such
cases may maintain trespass and trover for the chattel
without first exhausting other security which he holds.
Ibid. s. 448.

On November 6, 1883, Joseph Longey and the defendant
C. S. L. Leach, husband of the defendant Emma, made an
agreement whereby both the gray and bay horses were de-
livered into the possession of said C. S. L. Leach, as the
property of said Emma, and the note of Joseph secured
upon said horses was surrendered, and the horses there-
afterwards remained upon said farm in the possession of
C. S. L. and Emma until November 20, 1883, when C. S. L.
took said gray horse to Swanton and sold it. This agree-
ment and transfer of possession was after the execution of
the plaintiff's mortgage, and did not impair the plaintiff's
rights, which vested in him the moment his mortgage was
duly executed on October 15, 1883.

Under this arrangement of November 6 there was no intermeddling with the mortgaged property by the defendant Emma Leach, except that after her husband took possession of it, it remained on said farm in her and her husband's possession. The husband took the possession of the horse mortgaged on its surrender by Joseph Longey; and in this act the wife did not participate; and the subsequent possession of the horse by the husband and wife jointly is not a tort on the part of the wife. Torts committed by the wife jointly with or in the company of her husband are in law the torts of the husband, unless, at least, the presumption of coercion by the husband be rebutted by proof. Sch. Dom. Rel. 102.

The mere wrongful detention of property by the wife is not her tort, but that of her husband. 2 Greenl. Ev. s. 647. This action being against husband and wife jointly can only be maintained for some tort of the wife. *Shaw v. Hallihan,* 46 Vt. 393.

The judgment is reversed, and judgment is rendered on the report for the plaintiff against the defendant C. S. L. Leach for $110 and interest, and for the defendant Emma S. Leach to recover her costs.