MERCHANTS & PLANTERS BANK *v.* MEYER.

Opinion delivered October 22, 1892.

56 499]
69 310

1. *Landlord's lien—Mortgage.*

A landlord's lien upon a crop for rent is not displaced by his taking a mortgage upon the crop to secure it.
*Franklin* v. *Meyer*, 36 Ark. 97, followed.

2. *Landlord's lien—Conversion.*

Where a cotton factor sells the crop of a tenant under circumstances which would reasonably apprise him of the landlord's lien for rent, he will be liable to the landlord as for a conversion of the crop.

3. *Mortgaged chattels—Conversion by agent of mortgagor.*

Where an agent of a mortgagor, by absolute sale, disposed of mortgaged chattels and paid the proceeds, which were sufficient to satisfy both mortgages, to a prior, in exclusion of the rights of a junior, mortgagee, he will be liable to the latter for damages sustained by the wrongful conversion.

4. *Remedies of mortgagee of chattels converted.*

A mortgagee of chattels who has lost his security by the wrongful act of another is not compelled to look to the personal responsibility of the mortgagor, or to show his insolvency, or to follow the property, before recovering of the wrong-doer.

5. *Practice on appeal—Misnomer.*

Where a defendant was designated in the complaint, and answered upon the merits, by the name of the "Hammett *Warehouse* Company," its former name, it cannot object on appeal that judgment was without objection rendered against it by the name of the "Hammett *Grocer* Company," its present name.

6. *Banks—Duty to pay checks.*

Where a bank receives a general deposit of money from a customer, without actual knowledge or notice of any lien thereon in

favor of another, it is bound to honor the customer's checks, until his deposit is exhausted, and is liable to no one else for so doing.

7. *Effect of making note payable at bank.*

Where a note is payable at a certain bank, the bank is not required to appropriate to the part payment thereof money which was deposited, after maturity of the note, to the credit of the maker thereof.

Appeal from Jefferson Circuit Court in Chancery.

JOHN M. ELLIOTT, Judge.

*M. A. Austin* for appellants.

1. There was no conversion by the Hammett Grocer Company. It is apparent that appellee knew, or could have known, that the Hammett Warehouse Company was selling the cotton and placing the proceeds in a solvent bank to the credit of Ritchie & Fitzhugh; he did not warn Howell or the company, or demand the proceeds, but stood by without objection, and hence is estopped. Bigelow on Estoppel (2d ed.), 452; 2 Johns. 573; 31 Ark. 131; Jones, Liens, sec. 583; 95 Ill. 346.

2. The Hammett *Warehouse* Company was sued, and without evidence the judgment was against the Hammett *Grocer* Company.

3. It was not the duty of the bank, after its debt was paid, to retain the surplus, and it is not liable for conversion in failing to do so. It had no right to transfer money from the account of Ritchie & Fitzhugh to the credit of Meyer without authority from the former. Not even to pay a note left with it for collection. 12 La. An. 257; 7 Wall. 447; 31 Mich. 230; 1 Morse on Banks (3d ed.), secs. 214, 317; *ib.* 324.

*J. M. & J. G. Taylor* for the Hammett Grocer Company.

The company received the cotton as a cotton factor, sold same for a commission and did not convert the proceeds, but deposited same with the bank to the credit of

Ritchie & Fitzhugh, the bank having a prior mortgage. 35 Ark. 539 ; 37 *id.* 115 ; Jones on Chat. Mortg. 490.

*N. T. White* for appellee.

1. Both the Bank and the Grocer Company had notice. Hunn was the president of Hammett Company and cashier of the bank, and his knowledge was binding on both companies. 54 Ark. 54.

2. Appellee had a landlord's lien, which was prior to all other claims or demands against his tenants, Ritchie & Fitzhugh. 25 Ark. 417 ; 25 *id.* 609 ; 31 *id.* 557 ; 33 *id.* 707 ; *ib.* 737 ; 36 *id.* 525 ; 45 *id.* 447. The waiver in favor of the bank did not displace the landlord's lien upon the balance of the crop. 33 Ark. 392–5. Nor was it displaced or affected by taking a mortgage. 36 Ark. 96, The remedies sought in this case are sanctioned in 33 Ark. 387 ; 35 *id.* 225 ; 52 *id.* 58.

3. As to the surplus in the bank's hands, after paying the debt due it, it was under obligation to see that the rest was paid. 35 Ark. 233 ; 33 *id.* 395.

4. The bank and the Hammett Company were joint *tortfeasors,* and both liable for appellee's entire debt. Bish. Non-Cont. Law, sec. 521; *ib.* secs. 519–20–22, 539; 15 Ark. 452 ; 23 *id.* 131 ; 39 *id.* 387.

5. It is too late here for the first time to object that the judgment was against the *Grocer* Company, when the *Warehouse* Company was sued. 6 Ark. 172 ; 7 *id.* 410.

BATTLE, J. Victor Meyer brought this action against Ritchie & Fitzhugh, the Merchants & Planters Bank, and the Hammett Warehouse Company, in the the Jefferson circuit court, on the equity side thereof, to recover the amount due to him for the rent of a plantation for the year 1889.

The main facts in the case are as follows : Meyer, being the owner of the plantation in Jefferson county known as the "Corinne Place," leased the same for the

year 1889 to Ritchie & Fitzhugh for $1400, for which they executed their note to him, and thereby promised to pay the same on the first day of November, 1889, at the Merchants & Planters Bank. In the month of March following, finding that they would need money to enable them to cultivate the place, they secured from the Merchants & Planters Bank a loan of $2000 for that purpose. In order to aid them in procuring this loan, Meyer agreed with the bank to postpone the collection of his note until the bank was paid. On the 4th day of March, 1889, they gave to the bank a mortgage on all the crops raised by them on the "Corinne Place" in the year 1889 and on a certain lot of mules and farming implements, to secure it in the payment of the $2000. The indebtedness for the loan was evidenced by four promissory notes mentioned in the mortgage, which provided that if they were not paid on or before the 15th day of October, 1889, it could be foreclosed by public sale. Further than this the dates of the maturity of the notes do not appear in the record here.

On the 5th of March, 1889, the day following the execution of the mortgage to the bank, Ritchie & Fitzhugh executed a mortgage on the same property to Meyer to secure him in the payment of the note executed to him by them for rent, and therein provided that it should be subject to the mortgage executed to the bank to secure the $2000. This mortgage was duly acknowledged and filed for record on the day of its execution.

During the year 1889, Ritchie & Fitzhugh raised on the "Corinne Place" more than ninety-seven bales of cotton—how much more does not appear. They delivered ninety-seven bales of it, in many small lots, at divers times, to the Hammett Grocer Company, a corporation engaged in the business of a cotton factor, to be sold on commission, with instructions to deposit to their account in the bank so much of the proceeds of the sale thereof as was not

delivered to them. It sold the cotton in more and smaller lots than it received it and at as many times, and, after deducting its commissions, deposited the residue of the proceeds of the sales, at different times, in various sums, amounting in the aggregate to $4,310.50 in the bank, to to the credit of Ritchie & Fitzhugh. All of this money was appropriated by the bank to the payment of the notes which were secured by the mortgage executed to it, and the checks which were drawn by Ritchie & Fitzhugh on the bank at divers times.

Meyer deposited the note, which was executed to him for rent, with the bank on the 31st of October, 1889; but, at the time it became due, there was nothing to the credit of Ritchie & Fitzhugh with the bank. After its maturity, two sums, $978.93 and $347.43, the proceeds of a portion of the 97 bales of cotton, were, respectively, deposited on the 16th of November and the 11th of December, 1889, with the bank. The larger portion of these two deposits were applied by the bank to the payment of the notes which Ritchie & Fitzhugh owed it, and the remainder was paid on the checks of the depositors.

The Hammett Grocer Company knew, through its officers, at the time it received the cotton, that Ritchie & Fitzhugh rented the "Corinne Place" of Meyer in 1889 and cultivated it in that year. It did not know that they cultivated any other place. It knew that they were not able to cultivate it without financial assistance, for they applied to it for such aid, and it refused it. The bank had no actual notice or knowledge that Meyer had any lien on or interest in the deposits which were made with it by the Hammett Grocer Company, at the time it appropriated and paid them out.

Upon these facts Meyer sought to hold the bank and Hammett Grocer Company responsible, by this action, for the rent of the "Corinne Place" for 1889, complaining that there was nothing left to pay the note held by

him, and that Ritchie & Fitzhugh were insolvent. The Hammett Grocer Company was designated in the complaint and sued as the Hammett Warehouse Company, and at one time bore that name. The only defense pleaded by it was that, in receiving and selling the cotton and paying over the proceeds of the sale, it acted as a cotton factor, and had no notice of plaintiff's liens, and, therefore, was not guilty of conversion. Nothing was alleged or proved in mitigation of damages.

The circuit court decreed that $260, which was in the hands of a receiver appointed in this action, be paid to plaintiff; and that plaintiff recover of the Hammett Grocer Company $1064.03, and of the bank $169.61, the amounts so recovered being the sum due to Meyer for rent; and the Hammett Grocer Company and the bank appealed.

1. Landlord's lien not displaced by mortgage.

The mortgage executed by Ritchie & Fitzhugh to Meyer did not displace the lien on the crops, which he would have been entitled to hold as landlord in the absence of other liens. The powers conferred and rights and interests acquired by the mortgage were cumulative. The landlord's and the mortgage liens could have been enforced at the same time during their existence. *Franklin* v. *Meyer*, 36 Ark. 96.

2. Conversion of crop subject to landlord's lien.

Did the Hammett Grocer Company have notice of the fact that Meyer held a lien on the ninety-seven bales of cotton delivered to it by Ritchie & Fitzhugh, at the time it received and sold them? It had notice of every fact necessary to show that he had such a lien, except, perhaps, actually knowing that the rent was unpaid; but it had knowledge of enough to put it on inquiry to ascertain the fact in that regard, and that was sufficient notice of whatever an inquiry would have revealed. It knew that Ritchie & Fitzhugh were tenants of Meyer, and that he had a lien on the crops grown by them, because the statute gave it to him, and every one is pre-

sumed to know the law. It also had reason to believe that they were unable to grow the crops without financial aid from others, because they applied to it for such assistance. The reasonable apprehension was that the rent was unpaid; and good faith and a proper regard for the rights of another demanded an inquiry as to the payment of the rent before making any sale or disposition of the cotton which would likely impair or destroy the landlord's lien. That inquiry, properly made, would have discovered the lien. It, therefore, had notice. *Watt* v. *Scofield*, 76 Ill. 261; *Dunn* v. *Kelly*, 57 Miss. 825.

Having notice, it was liable to Meyer for the damages suffered by him on account of the violation or destruction by it of his landlord's lien. *Hussey* v. *Peebles*, 53 Ala. 432; *Hudson* v. *Vaughan*, 57 Ala. 609; *Lavender* v. *Hall*, 60 Ala. 214; *Thompson* v. *Powell*, 77 Ala. 391; *Dunn* v. *Kelly*, 57 Miss. *supra; John* v. *Smith*, 64 Miss. 816.

As to the mortgage which was executed to Meyer, it admits that it received and sold the cotton, but seeks to justify its action by saying that it had no notice of a lien created thereby, and that it acted as a cotton factor and delivered the proceeds of the sale to Ritchie & Fitzhugh and their agent, the Merchants & Planters Bank. Further than this it does not seek to excuse or extenuate its acts. It does not pretend to say that the sale was made with the consent of Meyer. It did not sell under Meyer's mortgage or subject to it, but independently of and in hostility to it, and sold the cotton as the absolute property of Ritchie & Fitzhugh, and for them asserted dominion and control as against every other person, except perhaps the bank, whose rights it respected, at the request of its principals, to the extent of depositing with it a part of the proceeds of the sale. No effort was made to show that the mortgage to Meyer was left unimpaired, or that he can still enforce the same against the

*3. Conversion of mortgaged crop.*

property which was subject to it. The fair inference from the record is that all remedy under the mortgage against the property has been lost through the sale made by the Hammett Grocer Company. There is no contention to the contrary, but it is virtually conceded.

Under these circumstances was the Hammett Grocer Company liable to Meyer in any manner? An absolute sale of property mortgaged by a valid deed, which has been duly acknowledged and filed for record, made by any one acting as agent of the mortgagor, in exclusion or defiance of the rights of the mortgagee, is a conversion for which such agent is liable to the mortgagee, though the sale is made in good faith and without actual notice of the mortgage. *Brown* v. *Campbell*, 44 Kas. 237; *Coles* v. *Clark*, 3 Cush. 399; *Spraights* v. *Hawley*, 39 N. Y. 441; *Marks* v. *Robinson*, 82 Ala. 69; *Perkins* v. *Smith*, 1 Wilson, 328; *Stephens* v. *Elwall*, 4 Maule & S. 259; *McCombie* v. *Davies*, 6 East, 538; *Hoffman* v. *Carow*, 22 Wend. 285; *Hills* v. *Snell*, 104 Mass. 173; *Willams* v. *Merle*, 11 Wend. 80; *Saltus* v. *Everett*. 20 Wend. 267; *Pease* v. *Smith*, 61 N. Y. 477. If the mortgagee was entitled to the possession of the property at the time of the conversion, he could, at common law, have maintained an action of trover for the value of the property; but if he was not, trespass on the case was the remedy. *Forbes* v. *Parker*, 16 Pick. 462; *Welch* v. *Whittemore*, 25 Me. 86; *Googins* v. *Gilmore*, 47 Me. 9. In cases where a valuable right or property is destroyed or lost by the wrongful act of another, the law, as a rule, provides a remedy. If it be a landlord's lien, he is entitled to his remedy in the nature of an action on the case for damages; and the same has been held to be the law as to equitable liens. *Hovey* v. *Elliott*, 53 N. Y. Superior Court Rep. 331; *Hale* v. *Omaha Bank*, 64 N. Y. 550; *Husted* v. *Ingraham*, 75 N. Y. 251; 1 Jones on Liens, sec. 95. A subsequent mortgagee only holds an equita-

ble title in the property mortgaged, subject to all the existing rights and equities of the prior mortgagee, and is most unquestionably entitled to sue for and recover damages to his rights and interests in the property which have been caused by the wrongful act of another. *Newman* v. *Tymeson*, 13 Wis. 172; Jones on Chattel Mortgages, sec. 492, 500.

Under the statutes of this State which make the filing of a mortgage for record notice to all persons of its existence, the Hammett Grocer Company had notice of the mortgage held by Meyer. Mansf. Digest, sec. 4743. Its acts, therefore, being in hostility, defiance and usurpation of his rights under the mortgage, were clearly wrongful. It is not a sufficient defense for it to show that it deposited the proceeds of the sales made by it with the bank, which held a prior mortgage on the cotton. The bank was not entitled to more than enough to satisfy the indebtedness which the mortgage held by it was executed to secure. There was enough to satisfy both. The consequence is, the Hammett Grocer Company, having violated the rights of Meyer, is liable to him for damages.

All forms of action having been abolished by the Code of Practice in civil cases in this State, no question can arise in this case, as at common law, as to whether an action of trover, trespass or case was the remedy. *Organ* v. *Memphis & L. R. R. Co.* 51 Ark. 235. It is enough to find that the Hammett Grocer Company, having violated or destroyed Meyer's liens, is liable to him for the damages occasioned thereby, the measure of which in this action is his debt and interest, nothing having been shown in mitigation. Before recovering this damage, he was not compelled to look to the personal responsibility of Ritchie & Fitzhugh, or to show their insolvency, or to follow the cotton. *Worthington* v. *Hannah*, 23 Mich. 536; *Longey* v. *Leach*, 57 Vt. 377;

4. Mortgagee's remedies for conversion.

*Peckinbaugh* v. *Quillin*, 12 N. W. Rep. 104 ; Jones on Chattel Mortgages (3d ed.), secs. 448, 449. Having his remedies, he could elect to pursue any of them.

5. Practice on appeal as to misnomer.

It is said by the appellants that the circuit court erred in rendering judgment against the Hammett Grocer Company when it was not sued. The evidence shows that it and the Hammett Warehouse Company are the same company, and that it was formerly the Hammett Warehouse Company. It is evident that it was meant and understood to be sued. By the latter name it was sued and answered upon the merits. The defenses pleaded by it were defenses which no other company had a right to set up. Having made its defenses under the name by which it was sued without objection, it cannot take advantage of the misnomer in this court for the first time.

6. Duty of bank to pay depositor's checks.

A rule different from that which fixes the liability of the Hammett Grocer Company governs the accountability of the Merchants & Planters Bank in this action. Banks sustain a peculiar relation to their depositors, and deal in money which bears no marks by which its identity can be ascertained. When money is placed as a general deposit in a bank, it is no longer the property of the depositor, but immediately becomes the money of the bank. The depositor becomes the creditor of the bank, and the bank his debtor ; and the bank is bound by an implied contract to honor the checks of the depositor to the extent of his deposit. When his checks are drawn in proper form, the bank is bound to honor them. It cannot excuse a refusal to pay them by showing that it had reason to believe that the checks were given for an unlawful purpose, or that other persons had liens or claims on the money deposited. Having no actual notice or knowledge that the money is the property of another or incumbered by liens or claims of others, it cannot lawfully refuse to pay a check of the customer. In such

an event it is bound to honor his checks until his deposit is exhausted, and is liable to no one on account of such payments. *Gray* v. *Johnston,* L. R. 3 H. L. Cases, 14; *Bank* v. *Clapp,* 76 N. C. 482; *Walker* v. *Manhattan Bank,* 25 Fed. Rep. 255; *Goodwin* v. *American Nat. Bank,* 48 Conn. 550; *Keane* v. *Roberts,* 4 Madd. 332, 357; 1 Morse on Banking (3d ed.), sec. 317, and cases cited. We do not, however, mean to say that a bank, having such notice or knowledge, would or would not, under any circumstances, be bound to pay a check of a customer to the extent of his deposit, that question not being presented for our consideration.

In this case the Merchants & Planters Bank had no actual notice or knowledge that Meyer had any lien on the money deposited with it; and it was bound to pay the checks of Ritchie & Fitzhugh, in whose name it was deposited, until it was exhausted, and was not liable to Meyer because it did so. But the note held by Meyer was delivered to the bank for collection before its maturity. It was made payable at the bank. Was it the duty of the bank to pay it?

As to the authority of a bank at which the note of its customer is made payable, the authorities are divided. One line of them holds "that a banker at whose house negotiable paper is made payable, may apply to its payment funds of the maker or acceptor held on deposit at its maturity, the relations of banker and customer, and the tenor of the instrument, justifying the inference that the customer intended this to be done." *Indig* v. *National City Bank,* 80 N. Y. 106; *Ætna Nat. Bank* v. *Fourth Nat. Bank,* 46 N. Y. 82, 88; *Citizens' Bank* v. *Carson,* 32 Mo. 191; *Robarts* v. *Tucker,* 16 Ad. & El. (N. S.) 578; *Forster* v. *Clements,* 2 Camp. 17; *Mandeville* v. *Bank,* 9 Cranch, 9; *Lazier* v. *Horan,* 55 Iowa, 75; *Whitaker* v. *Bank of England,* 6 C. & P. 700; Byles on Bills (7th ed.), pp. * 19, 188; Edwards on Bills &c. (2d ed.)

7. **Effect of making note payable at bank.**

\* 166 ; 1 Randolph on Commercial Paper, sec. 125 ; 1 Daniel on Negotiable Instruments, secs. 325, 326 ; 2 Morse on Banking, sec. 557.    Another line holds that the bank has no such authority, in the absence of a usage binding on the maker or of instructions from him to that effect. *Wood* v. *Merchants' Saving, Loan & Trust Co.* 41 Ill. 267, 270 ; *Ridgeley Nat. Bank* v. *Patton*, 109 Ill. 479, 483 ; *Exchange Bank* v. *Bank of North America*, 132 Mass. 150, 151 ; *Scott* v. *Shirk*, 60 Ind. 160, 161 ; *Grissom* v. *Commercial Nat. Bank*, 87 Tenn. 351 ; S. C. 10 S. W. Rep. 774.    But it is not necessary for us to decide this question.    The bank in this case was under no obligation to pay the note held by Meyer.    At the time of the maturity of the note, there were no funds of Ritchie & Fitzhugh in the bank.    In such a case there could be no implied authority to pay.    *Coates* v. *Preston*, 105 Ill. 470 ; *In the matter of Brown*, 2 Story, 502 ; 2 Parsons on Bills & Notes, 78.    The absence of funds negatives such an intention on the part of the makers.

The bank was not required to appropriate to the part payment of the note the money which was deposited, after its maturity, to the credit of Ritchie & Fitzhugh.    *Nat. Bank of Newburgh* v. *Smith*, 66 N. Y. 271 ; *Voss* v. *Bank*, 83 Ill. 599 ; *People's Bank* v. *Legrand*, 103 Pa. St. 309 ; *First Nat. Bank* v. *Shreiner*, 110 Pa. St. 188 ; Daniel on Negotiable Instruments, sec. 326. Such an act does not evidence an intention that it should be, the note being dishonored.    The fact that the subsequent deposits were not sufficient to pay the note also relieved the bank of the duty to appropriate; for if it had, the note could not have been taken and held by it as an evidence of its authority to pay and as a voucher. *Coates* v. *Preston*, 105 Ill. 470 ; *In the matter of Brown*, 2 Story, 502 ; 2 Parsons on Bills and Notes, 78.

The bank had the right to appropriate the deposits to the payment of the notes held by it against Ritchie &

Fitzhugh whenever they became due and payable; and also had the right to appropriate the deposits, which were made after the notes became due, in the same manner. It was authorized to do so by virtue of the mortgage executed to it by Ritchie & Fitzhugh.

The result is, the judgment against the bank should be reversed, and, Meyer not having appealed, the judgment against the Hammett Grocer Company should be affirmed ; and it is so ordered.