6L 273
10L 222
12L 79

THE BANK OF GALLATIN *et al. v.* W. H. BABER *et al.*

1. STATUTE OF LIMITATIONS. *Schools.* The statute of limitations may be relied on as a defense to an action on a claim against the school districts, both by the board of school commissioners and their disbursing officer.

2. ORDER OF SCHOOL COMMISSIONERS. *Not negotiable. Evidence.* The order of school commissioners on the disbursing officer in favor of a school teacher, is a mode of reaching the money in the treasury of the school district, is not negotiable, and does not bear interest, but entitles the holder to be paid in the order of its presentation. It is not a satisfaction of the debt for which it is given, and only *prima facie* evidence of its existence, and all rights under it may be lost by a failure to present it for payment until the debt is barred.

3. SAME. *Action. Presentation for payment. New promise.* Ordinarily the right of action on such order against the disbursing officer accrues upon the presentation of the order for payment, and the receipt of sufficient funds to pay it, and the statute of limitations would then begin to run, and the bar would attach by the lapse of the prescribed time, but the liability of the officer might be kept alive by a new promise.

4. SAME. *Liability of disbursing officer of school fund.* The holder of such an order might, however, where the school officials have acted under the belief, acquiesced in by the holder, that the expenses of each year were a prior lien on the school funds, and that old debts must be postponed until there was a surplus, abandon the rights acquired by a previous presentation, and look to the liability of the last disbursing officer to whom the order was presented for payment. And if that officer, under the prevalent belief as to his duty, had appropriated the money which ought to have paid the order, for other school purposes, he is entitled to be indemnified out of any funds coming to his hands.

5. SAME. *General school fund.* Under the act of 5th July, 1870, all claims of school teachers during that year, or prior thereto, should be paid out of the general school fund of the county before division. Subsequent claims shall be paid out of the funds of the districts in which the services were rendered.

18—VOL. 6.

Bank of Gallatin *v.* Baber.

·6. SCHOOL DISTRICTS. *Change of.* A change in the school districts, made by the county court, would be a change of form, not substance, and the debt of the old districts would be borne by the new districts, including the territory and population of the old districts.

### FROM SUMNER.

Appeal from the Chancery Court at Gallatin. ·GEO. E· SEAY, Ch.

ALLEN· & BRO. and J. J. TURNER for complainants.

J. W. BLACKMORE and HEAD BROS. for defendants.

COOPER, J., delivered the opinion of the court.

By the agreed statement of facts in this case, the parties submitted to the chancery court the question whether the right of action of the complainants on certain orders, drawn by the commissioners of common schools on the county trustee, in favor of teachers for services performed, was barred by the statute of limitations. The complainants claim that the orders were for services actually rendered, and that they were presented to the county trustee within six years before the filing of the bill, and that he promised to pay them as soon as he received school moneys which could, under the law, be applied to their payment, and· it is agreed that the court may pass upon the question of the bar of the statute of limitations upon the supposition that such a promise was made, and that the claims were valid, reserving the right to con-

test the points as to particular claims upon a reference. The chancellor found in favor of the complainants, and the defendants appealed.

The original bill was filed on the 22d of April, 1878, by the holders of orders given for services rendered in the year 1870 and prior years. Another bill was filed on January 10, 1881, upon similar orders, and also upon two orders for services during the year 1873, drawn the 31st of October and 20th of December of that year, by the school commissioners on the clerk and treasurer of the district. Most of the orders sued on were presented for payment to the county trustee shortly after they were drawn, and accepted in writing in the following form, giving the date: "I accept the within order, to be paid when sufficient funds come into my hands," and signed by the trustee.

We have held that a county warrant, which is an order by the judge or chairman of the county court on the county trustee, is not a negotiable instrument, although made payable to a person named or order, and does not bear interest. It is, under our statutes, only a mode of reaching the money in the county treasury for the payment of county debts: *Camp* v. *Knox County*, 3 Lea, 199. The warrant is *prima facie* the authentication of the claim for which it is given, and a voucher to the disbursing officer for the payment. It is, however, neither a bill, note, check nor contract, nor a liquidated and settled account signed by the debtor, nor a satisfaction of the original indebtedness: *Dyer* v. *Covington*, 19 Penn. St., 200. Whether the county can be sued upon these orders or

not, it is certain that it may be sued on the original consideration for which they are given: 1 Dan. Neg. Inst., sec. 431. The statute gives the holder a remedy against the trustee and his sureties for the payment of the warrant, if he chooses to follow the requirements of the law and assert his rights. If he prefers to look alone to the county, and brings suit either upon the original consideration or the warrant, the statute of limitations may be relied on in bar of the action, subject to avoidance by a new promise as in other cases.

By the common school laws, as we have recently had occasion to hold, the school commissioners of each district are authorized to employ teachers, and draw orders on the county trustee in favor of such teachers for their compensation. The trustee holds the school fund primarily for the payment of such claims, and is liable to an action if he receive money to meet the order and yet fails to pay it: *Bayless* v. *Driskels*, MS. opinion, Knoxville, 1880. The analogy between the warrant and the order is obvious. The order, like the warrant, is only a mode of reaching the money in the treasury of the school district for the payment of the debts of the district. It is *prima facie* a recognition of the debt for which it is given, and a voucher to the trustee for its payment. It is neither a bill, note, check nor contract, nor a liquidated and settled account signed by the debtor, nor a satisfaction of the original indebtedness. It is, therefore, not negotiable, nor does it bear interest, as against the district. The district may be sued on the original consideration

through the board of commissioners: *Shankland* v. *Phillips*, 3 Tenn. Ch., 556. No reason occurs why the statute of limitations might not be relied on either by the commissioners or the trustee, subject to be avoided by a new promise, as in other cases.

By the agreed case, although the suits were originally brought only against the county trustee, the commissioners of the school district occupying the territory of the old district are brought before this court, and rely, as does the trustee, upon the statute of limitations. The period of six years had elapsed, and the bar of the statute had attached both in favor of the commissioners and the trustee—in favor of the former on the original consideration, and in favor of the latter on the order and its acceptance. Unless, therefore, there is something in the nature of the case, or in the promise of the trustee within six years, to take the case out of the bar, the statute would be a good defense.

It is not contended by the complainants that there has been any promise to pay within the six years of the statute of limitations by the school commissioners. The right of action against them individually, if it ever existed, or against them as the representatives of the school district, is barred. It is said in the original bill that the county court ordered the payment of such of the old school debts as should be pronounced valid by the finance committee of the county, but that certain of the school directors, on the 16th of January, 1878, filed a bill and obtained an injunction forbidding the finance committee from directing the payment of

any claims of teachers, and the county trustee from paying any of said claims out of the common school funds, or the funds of the county. Nothing is said on this subject in the agreed statement of facts. And it is clear that the county court would have no control over school moneys, or its appropriation, unless conferred by statute, and no such authority is shown. The bills do not aver that any of the claims sued on have been pronounced valid by the county finance committee.

The receipt by a creditor of the school district of an order of the school commissioners on the disbursing officer of the school funds, is not, as we have seen, a satisfaction of the debt. It is, like a check on a bank, only a means of payment. The holder of the order may never present it, or may lose his right under it by neglecting to present it until his debt is barred by the statute of limitations. Until he does present it to the disbursing officer, the funds in the hands of the latter belong to the school district, and may be legally paid out in satisfaction of other orders as they are presented. "First come, first served," is the rule in reference to these orders, as well as to county warrants and bank checks: *Matter of Brown,* 2 Story, 502. The trustee, under the act of 1870, which was the act in force when all of the checks in controversy were drawn except those of 1873, held the school funds, when received, "for the payment of teachers and others for actual services performed in carrying on the system of education." The person in whose favor an order was drawn, who presents it for

payment, would have a right of action thereon against the trustee if, in fact, he then had the money in his hands to meet the order and failed to pay it. If he did not then have the money, it would be his duty to pay it out of the first moneys which came to his hands, and the right of action on the order against the trustee would accrue upon the receipt of sufficient funds.

In this view, the first position assumed on behalf of the complainants is that the county trustee, upon the receipt of funds, becomes an express trustee for the creditor, and that there is no statute of limitations in such case. But express trusts, to which the statute does not apply, are those which are created by the direct and positive act of the parties by some writing, or deed, or will: 2 Sto. Eq. Jur., sec. 980; Perry on Trusts, sec. 24; *Armstrong* v. *Campbell*, 3 Yer., 200. To these cases the courts of this State have added the trusts of an executor or administrator to the legatees or distributees: *Lafferty* v. *Turley*, 3 Sneed, 158. The statute, in the absence of fraudulent concealment, applies to implied or constructive trusts: *Haynie* v. *Hall*, 5 Hum., 290; *Hevenden* v. *Auvesley*, 2 Sch. and Lef., 633; *Beckford* v. *Wade*, 17 Ves., 97; Perry on Trusts, sec. 865.

If, therefore, the creditor allow the time of the statute to elapse after his right of action accrued against the trustee by a presentation of the order for payment and the receipt of funds, the remedy would be barred. So it would be if the creditor neglected to present his order until the bar of the statute had

attached to the original cause of action. In the latter case the promise to pay, which would be required to revive the debt, could only be made by the original debtor, the school board. In the former case the promise might be made by the trustee. For, the receipt of the money would be a sufficient consideration for the promise, whether he appropriated the money to his own use or to the use of the school district. The provisions of the school law of 1870 made him the debtor for the amount appropriated by the order, upon presentation of the order and receipt of the money, and liable accordingly without acceptance. The liability thus created would be personal in the trustee receiving the money, and such a liability could, of course, be kept alive by a new promise.

The real difficulty in this case will probably be found to be that there has been a change of trustees, and successive presentations of the order to each trustee. The truth seems to be that the opinion prevailed among the officials entrusted with the administration of the school law, that the expenses of each year were a prior lien on the funds of that year, and that past indebtedness could only be paid out of the surplus funds of subsequent years, if any such contingency should happen. Each county trustee in turn adopted this construction of the law and acted accordingly. Without intending to do wrong, the result was the repudiation of honest debts. The creditors themselves seem to have accepted the situation, and patiently waited, under the promises made, for the hoped for surplus. The orders in controversy were probably

presented to each new trustee, and met with the same reply.

The several trustees have not appropriated to their own use any of the money which ought to have gone to the payment of these orders. The money has, no doubt, been paid out for school purposes under a mistaken construction of the school law. Under these circumstances we may equitably hold that the school officials are estopped by their own construction of the law. In this view, the holders of the orders were not bound to look to the personal liability of the first trustee who received sufficient funds to pay the orders after they were presented to him, but might abandon the right acquired by previous presentation, and look to the liability of the last trustee to whom presentation was made. And as that trustee used the money, which ought to have been appropriated to the payment of the orders, for other school purposes, he is entitled to be indemnified out of any moneys on hand, or which may come to his hands. No interest should, under these circumstances, be allowed either way.

The school law of 1873 created the office of clerk and treasurer of the school board of the district, and made him the disbursing officer of the school fund. The orders of the board were drawn upon him instead of the county trustee, and he acted upon the same construction of the school law. By his bond he was required to pay accounts in the order in which they are audited. The holders of these orders are entitled to the benefit of the rule laid down in reference to the orders on the county trustee, and the clerk and

treasurer may claim the same indemnity as the trustee.

The change in the school districts, made by the county court under that act, was one of form, not substance. The territory and population of the old districts are included in the new districts, and, if necessary, the burden could be fairly proportioned among them. All the claims, except those created in 1873, may, however, be considered as falling within the act of the 5th of July, 1870, and should be paid by the county trustee out of the school fund before it is prorated among the districts: *Arrington* v. *Cotton,* 1 Baxt., 316. The orders of 1873, if sustained upon the reference, may be paid out of the funds of the districts in which the services were rendered.

The decree of the chancellor will be modified in accordance with this opinion, and the cause remanded for further proceedings. The costs will be paid by the county trustee out of the school fund.