McCULLOUGH HARDWARE CO. et al. v. CALL.

(Court of Civil Appeals of Texas. Amarillo. April 5, 1913.)

1. HOMESTEAD (§ 74*)—LANDLORD AND TENANT (§ 323*)—RENTED PREMISES—CROPS — EXEMPTIONS.

Where, a contract by which plaintiff worked certain land belonging to another provided that the owner had rented the land to plaintiff, who was to have the exclusive possession thereof, and was to grow specified crops and deliver a portion thereof or their proceeds to the owner as rent, plaintiff was a tenant, and not a mere cropper, and hence was entitled to claim that crops grown on the property were exempt as the proceeds of a homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 107, 108; Dec. Dig. § 74;* Landlord and Tenant, Cent. Dig. §§ 1350, 1351, 1355, 1356; Dec. Dig. § 323.*]

2. TRIAL (§ 192*) — INSTRUCTIONS—ASSUMED FACTS.

Where the evidence bearing on a particular issue is not disputed, the trial judge in his charge may assume the existence of the fact.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

3. APPEAL AND ERROR (§ 216*) — INSTRUCTIONS—WAIVER OF ERRORS.

Defendant cannot complain on appeal of an incorrect instruction on the measure of

damages, where it failed to request a special charge submitting the correct rule.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216.*]

Error to District Court, Scurry County; Jno. B. Thomas, Judge.

Action by T. H. Call against the McCullough Hardware Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Higgins, Hamilton & Taylor, of Snyder, for plaintiffs in error. Perkins & Perkins, of Snyder, for defendant in error.

HALL, J. [1] Defendant in error, Call, sued McCullough Hardware Company, a corporation, and J. B. Boles, sheriff of Scurry county, to recover actual and exemplary damages for the levy of an execution upon certain crops. It is alleged the crops were partially gathered, and the ungathered portions matured, and defendant in error claimed them as exempt upon the ground that the ungathered crops were standing in the field on his homestead, and that certain feed which had been gathered was exempt as being necessary for home consumption. Defendant in error, Call, had raised the crops upon certain premises belonging to P. S. McDermott, situated in Scurry county, and which he was occupying under a contract which (omitting the caption and signatures) is as follows: "This agreement made and entered into this January 1st, 1911, by and between P. S. McDermott, party of the first part, and T. H. Call, party of the second part, all of the state and county aforesaid, witnesseth: That the said P. S. McDermott has rented unto the said T. H. Call 100 more or less acres of land in said West farm until the 1st day of January, 1912, said farm being a part of Sec. No. 454, in Blk. No. 97, in Scurry county, Texas, and said T. H. Call, party of the second part, binds himself to cultivate 50 acres of said land in cotton and —— acres in corn and —— acres in kaffir corn and —— acres in maize, and —— acres in ——, and to plant and cultivate same in a good and farmer-like manner and to deliver one-fourth of all cotton that he may make on said land during the year 1911 to said P. S. McDermott after it has been ginned and baled, he, the said P. S. McDermott, paying for one-fourth of all bagging and ties necessary for the entire crop of cotton, one-fourth of ginning; said party of the second part shall deliver to said party of the first part one-fourth of all cotton seed so raised at his barn. And to deliver to the crib or granary of said party of the first part, at barn, one-third of all corn or other grain raised on said land during said term of lease, and to cut and bind such of said corn or other feedstuff as party of the first part may designate at his, party of the second part's, own expense, and all such corn or other feedstuff that is required to be cut and bound shall be required to be bound and shocked in the field, but all kaffir corn, maize, and other grain shall be either headed or cut and bound as party of the first part may designate. The said party of the second part binds himself to assist in keeping the stock from destroying the crop to be raised by him on said land and in keeping the fencing on and around said rented lands, thereby giving said party of the first part a lien upon said crop, for the performance of the above obligations. It is further agreed that neither the party of the first part nor the party of the second part shall have any right to dispose of any part of said crop until the terms of this contract as to that party shall have been complied with in full. And it is further agreed by both parties hereto that neither party hereto shall pasture said farm lands without the written consent of the other at any time during the life of this lease. It is further agreed by both parties hereto that said party of the second part is to have the right to allow five head of horses and three head of cows to run in the pasture now belonging to said party of the first part at ——. It is further agreed by both parties hereto that party of the second part shall use due diligence to prevent the destruction of the house and of all fencing about the house and farms herein rented, by fire or other means, and to repair at his own expense all damage he, or his family, or those associated with him, may do or cause to be done to said houses and other improvements, and to return same to party of the first part in as good condition as found by him at the beginning of this lease, save such as may be caused by reasonable wear and providence. It is further agreed by all parties hereto that at any time party of the second part shall cultivate or gather said crop as speedily as reasonable diligence would demand that party of the first part shall have same done and pay for such labor out of the proceeds of said crop that may belong to party of the second part, and that in addition to the liens already provided by law, said party of the first part is hereby fully empowered to take into his possession and sell at the current market price the first products of said crops as fast as same can be prepared for market, to an amount sufficient to repay all advances made by said party of the first part to said party of the second part, and to pay all rents due or to become due on said land. In testimony of all the above we hereunto sign our hands this the first day of Jan., A. D. 1911."

There was a judgment in favor of defendant in error for $175, from which this appeal is prosecuted. It will not be necessary for us to consider the assignments of error in detail. Briefly summarized, the contentions of plaintiff in error are: The court erred in not setting aside the verdict of the jury,

because there was insufficient evidence to establish the fact that the crops levied upon were raised upon a homestead and because the court erred in refusing to submit the issue of homestead to the jury.

[2] As we understand the rule, where the evidence bearing upon any particular issue is not disputed, the trial judge may in his charge assume the existence of the fact. The issue to be determined was the relationship existing between the owner of the premises, McDermott, and defendant in error, Call. If such relationship was that of landlord and tenant, the court did not err in refusing to charge upon the issue of homestead. If, on the other hand, defendant in error was merely the "cropper" of McDermott, then the relation of master and servant existed, and Call could not claim the property as exempt. In construing contracts like the one under consideration, the authorities have announced certain rules, which we find apply in the instant case, and which lead us to the conclusion that the relation of landlord and tenant existed. It is said that if the contract contains a provision for a division of the crops by the occupant, or for their sale by the occupant and a division by him of the proceeds, it will have controlling weight in determining the relation between the parties to be that of landlord and tenant. That if the agreement reserves a part of the crop as rent eo nomine, and if technical words of demise are used, and it appears from the entire contract that the occupant was to have possession of the premises to the exclusion of the owner, these facts show that the relation of landlord and tenant exists. It is further decided that the intention of the parties as expressed in the language they have used, interpreted in the light of the surrounding circumstances, and the construction placed upon the agreement by the parties themselves, may be controlling in showing the character of the contract. The word "rent" appears in the written contract, and it is provided therein that the occupant of the premises is to deliver one-fourth of all the cotton that he may make on the land during the year 1911 to the owner, and that such delivery is to be made after it has been ginned and baled, and that he shall deliver one-fourth of all the cotton seed so raised at his barn and to deliver to the crib or granary of the owner one-third of all corn or other grain raised on said land during the term of the lease.

From the testimony of both parties to the contract it appears that they considered it one of lease, since McDermott speaks of the crops as belonging to Call, and uses this language: "I am the same P. S. McDermott that rented the land to T. H. Call, last year —1911. I was about and on his premises and I saw his cotton and maize and cane, etc. * * * Now, the kaffir corn that we actually did cut off of Mr. Call's place, amounted to 1,530 bundles." It further appears from the statement of facts that defendant in error gathered the crops, paid McDermott his rent, and in settling matters between them they considered and treated the contract as one of lease. We find upon further investigation that W. A. McCullough, the president of plaintiff in error, was with the deputy sheriff who levied the execution, and the uncontroverted testimony of the deputy is: "I released the levy on the two bales of cotton though and turned them over to Mr. McDermott at Mr. McCullough's request. I did that because Mr. McDermott said it was his cotton and claimed it—the two bales. I think that McDermott claimed the two bales as rent and also because he had furnished Mr. Call some." Since it is clear from the record that the relation of landlord and tenant existed, and by reason of such fact defendant in error was entitled to claim the property as exempt, and no issue was made by the evidence as to the relationship and the consequent existence of homestead exemptions, it follows that the court did not err in assuming that the property levied upon was raised upon the homestead and therefore exempt, and in refusing to give special charge No. 6, requested by plaintiffs in error.

[3] The only other point insisted upon by plaintiffs in error is to the court's charge on the measure of damages. If the charge was incorrect, it was the duty of plaintiffs in error to request a special charge correctly submitting the measure. Having failed to do so, they cannot be heard to complain in this court. However, we think the charge of the court is not subject to the criticism urged by plaintiffs in error.

The judgment of the court below is affirmed.