ADAMS v. A. A. PATON & CO. (No. 1397.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 28, 1915.)

1. APPEAL AND ERROR ☞866—QUESTIONS REVIEWABLE—FINDINGS.

On appeal from a judgment on a directed verdict, the question is not whether the evidence sustained the verdict, but whether the evidence may not support a contrary verdict, and in determining that question the court must give such weight to the testimony of the defeated party as the jury might have given, and also consider the fact when it is so, that the successful party had the burden of proof.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3467–3475; Dec. Dig. ☞866.]

2. LANDLORD AND TENANT ☞252—LIEN OF LANDLORD—WAIVER—BURDEN OF PROOF.

A purchaser from a tenant, when sued by the landlord for the value of the crop, has the burden of proving that the landlord has waived his lien for rent and advances.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1002, 1022–1026, 1029; Dec. Dig. ☞252.]

3. CONTRACTS ☞262—RIGHTS—"WAIVER."

A "waiver," as applied to contracts, is the intentional relinquishment of a known right, under the contract, based on a consideration, and the intention to waive must be proved like any other fact.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1181–1183; Dec. Dig. ☞262.

For other definitions, see Words and Phrases, First and Second Series, Waiver.]

4. LANDLORD AND TENANT ☞254—LIEN OF LANDLORD—WAIVER.

The law will not imply a waiver by a landlord of his lien for rent and advances, against his actual intent, in the absence of any grounds for estoppel in favor of a purchaser of the tenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 986, 1034–1044; Dec. Dig. ☞254.]

5. LANDLORD AND TENANT ☞254—LIEN OF LANDLORD—ESTOPPEL.

A landlord, who used the proceeds of a sale of a crop by the tenant, who deposited the same in a bank to the landlord's credit, was not thereby estopped from suing the purchaser for conversion, where the landlord did nothing to induce the purchase, and did not know of it until after his application of the proceeds.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 986, 1034–1044; Dec. Dig. ☞254.]

6. LANDLORD AND TENANT ☞252—LIEN OF LANDLORD—PURCHASER FROM TENANT—ACTIONS.

An action by a landlord, having a lien for rent and advances, against the tenant's purchaser, though termed one for conversion, is in reality one by a mortgagee for damages for the loss or impairment of his security, so that the amount of the recovery is measured by the extent of the damages caused.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1002, 1022–1026, 1029; Dec. Dig. ☞252.]

7. LANDLORD AND TENANT ☞252—LIEN OF LANDLORD—ACTION AGAINST PURCHASER—CONDITION PRECEDENT.

A landlord, having a lien for rent and advances, may sue a tenant's purchaser of the crop without first returning the part of the proceeds appropriated by the landlord for rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1002, 1022–1026, 1029; Dec. Dig. ☞252.]

8. LANDLORD AND TENANT ☞254—LIEN OF LANDLORD—WAIVER.

A waiver of a landlord's lien for rent and advances is not inferred from a mere transfer of the ownership by the tenant of the crop, but by the fact that the transfer is made with the understanding, assented to by the landlord, that the property is to be appropriated by the purchaser free from the incumbrance; and, where a sale by the tenant does not imply that the property is to be removed from the premises without consent of the landlord, the latter need not signify whether he assents or dissents.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 986, 1034–1044; Dec. Dig. ☞254.]

Appeal from Lamar County Court; Rube S. Wells, Judge.

Action by W. H. Adams against A. A. Paton & Co. From a judgment for defendants on appeal from a justice's court, plaintiff appeals. Reversed and remanded for new trial.

Wright & Patrick, of Paris, for appellant. Long & Wortham and Park, Moore & Hardison, all of Paris, for appellees.

HODGES, J. This suit was originally instituted in the justice court of precinct 1 of Lamar county, by the appellant against the appellees, to recover the sum of $131, alleged to be the value of certain cotton converted by the appellees upon which the appellant had a landlord's lien. The appellant recovered a judgment in the justice court for $111.18. The appellees perfected an appeal to the county court, where a verdict was rendered in favor of the appellees under a peremptory instruction from the court. The only question presented in this appeal is that which assails the correctness of that instruction.

It appears to be conceded that the evidence was sufficient to establish the following facts: During the year 1911 W. F. Adams was a tenant on the farm of W. H. Adams in Lamar county, and raised a crop of cotton, on which W. H. Adams held a landlord's lien for both rents and advances amounting to several hundred dollars. On the 23d of September of that year W. F. Adams sold two bales of the cotton raised on the rented premises to appellees, for which he received $87.75, and on October 6th he sold two other bales to the appellees, for which he received the sum of $90.67; the two sales aggregating $178.42. The rent due the landlord from this cotton amounted to $67.24, which was deposited by W. F. Adams to the credit of the appellant, W. H. Adams, in a bank at Petty, Tex., with which the appellant had an account and transacted his business. The remainder, $111.18, was retained by W. F. Adams. W. H. Adams subsequently appropriated and used the money which had been placed to his

credit by his tenant. About the 1st of December, 1911, the appellant and W. F. Adams had a disagreement growing out of their business transactions, and the appellant instituted a suit against W. F. Adams to recover what was then due for advances and rents. At the same time a distress warrant was sued out and levied upon the entire crop of the tenant. A judgment was finally rendered in appellant's favor for about $1,500, which was reduced to about $800 after applying the proceeds resulting from the sale of the crop seized under the distress warrant.

In defense of the instruction given in the trial of this case, it is contended that W. H. Adams accepted and appropriated a part of the proceeds of the sale made to the appellees by his tenant, and that such acceptance and appropriation conclusively shows an acquiescence on his part in that sale, and a waiver of his lien upon the cotton disposed of.

[1] There is considerable conflict in the testimony as to the conditions under which those sales were made and the appellant's conduct with reference to them. The tenant, W. F. Adams, testified that the appellant expressly agreed in advance that the cotton should be sold in order that the tenant might raise the funds necessary to meet pressing expenses; that after the sale had been made he deposited the appellant's rent to his credit in the bank, and on the same day delivered to the appellant a deposit slip showing the credit entry in the bank. The appellant testified that early in the season, before any of the cotton was gathered, he told his tenant not to sell any of the cotton raised on the premises; that they would wait until all of the cotton had been gathered and sell it in bulk, hoping to get a better price. He also says that later he forbade any selling of the cotton from the rented premises. He further testified that he knew nothing of this cotton having been sold till just before he filed his suit against his tenant in November or December, 1911; that he did not know any money had been deposited in the bank to his credit till some time in March, 1912, when he had his passbook balanced. If the testimony of the tenant be true, appellant consented to the sale of the cotton, under circumstances which implied a waiver of his lien. But if the testimony of the appellant be true, he did not, but, on the contrary, was ignorant that any sale had been made for more than a month afterward, and did not know that the money had been placed to his credit in the bank for approximately five months thereafter. The question before us is, not whether the evidence is sufficient to sustain the finding that the appellant had waived his lien, but whether the evidence may not support a contrary finding. In determining that question we must give such weight to the testimony of the appellant as the jury might have given, and regard as proven all the material facts to which he testified.

[2] We must also give due consideration to the fact that the appellees had the burden of proving that the lien had been waived.

[3] A waiver has been defined to be the intentional relinquishment of a known right, based upon a consideration. M., K. & T. Ry. Co. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 745; 29 Eng. & Amer. Ency. of Law, 1091. That definition, of course, refers to contracts and agreements relinquishing rights. In such instances the intention to waive the right must be proved like any other fact.

[4] According to the testimony of the appellant in this case, there was no intent upon his part to waive his lien on the cotton in controversy. It cannot be said that he impliedly waived his rights in a transaction of which he was ignorant, unless he was guilty of conduct from which the law would conclusively presume that this had been done for some equitable reason. If the appellant's testimony is to be relied on, he did nothing in advance of the sale from which the inference could be drawn that he was willing to waive his lien. There is no pretense that the agent of the appellee, to whom the cotton was sold by the tenant, was influenced in anything he did or failed to do by the appellant's conduct. In fact, this agent testified that he did not know that the cotton was raised on the appellant's premises, indicating that he did not suspect that the appellant had any claim on it. The law will not imply a waiver under such conditions, in opposition to the actual intent of the lienholder; there being no grounds for invoking an estoppel.

[5] The only grounds relied on for an estoppel in this case is the act of the appellant in using the proceeds of the sale of the cotton after it had been placed in the bank to his credit. Viewing the transaction from the testimony of the appellant, the question is: Did his appropriation of money equal to the value of his rents in that particular cotton, in ignorance of the fact that it was a part of the proceeds of that sale, and the retention of the money after he ascertained that fact, estop him from saying that he had not waived his lien for other debts due him? We think not. The appellant was not called upon to make an election as to what course he would pursue regarding this transaction till he knew the cotton had been sold and the money placed to his credit. According to his testimony, he was not placed in that situation till about five months after the date of the sale. What was he then to do? Was there more than one remedy available to him at that time? The evidence does not show what disposition had then been made of the cotton. It is to be inferred from the record that the appellees were buying cotton in the ordinary course of trade for specula-

tive purposes, and that this cotton was acquired in the open market with the expectation that it would be shipped out of the country at once, or probably so mingled with other cotton that it could not be identified five months later. It follows that when the appellant became aware of the true situation there was but one course open to him—to sue the purchasers of the cotton for damages.

[6] Actions of that character are usually termed suits for conversion, but they are in reality suits by a mortgagee for damages for the loss or impairment of his security, and the amount of his recovery in the suit is measured by the extent of the damages inflicted. In this case the evidence shows that the appellant held a lien against this cotton for a debt which exceeded in value the cotton itself. Hence he was entitled to have applied on that debt the entire value of the cotton sold.

[7] Having the right to sue for this amount, the law would not require him, as a condition to its exercise, to do so foolish a thing as to first return a portion of that which he would clearly be entitled to recover back. It would be different should the appellant undertake to follow the cotton itself and subject it to the payment of his debt. If permitted to subject the property to the payment of his claim without returning the money received, the landlord would be the gainer, and the purchaser a corresponding loser, to the extent of the proceeds retained from the previous sale. The injustice of such a proceeding is apparent at a glance. But no such inequitable conditions grow out of a suit for damages for the loss or impairment of the security. An action for damages to the security involves an abandonment of the lien on the property, and is an affirmance, rather than a repudiation, of the transaction by which the property passed to the purchaser.

[8] The law imposes no restraints whatever upon the right of the tenant to sell or otherwise dispose of the crops upon which the landlord may have a lien. It is the removal of those crops from the rented premises without the landlord's consent which the statute forbids. If the sale by the tenant does not carry with it the implication that the property is to be removed from the rented premises without the consent of the landlord, the latter is not called upon to signify whether he assents or dissents. His rights are not jeopardized as long as his security remains undisturbed. There is no impairment of the security in the mere assignment of the title to the property subject to the lien. Hence a waiver of the landlord's lien is not to be inferred from the mere transfer of the ownership of the property by the tenant, but by the fact that such transfer is made with the understanding that the property is to be appropriated by the purchaser free from the incumbrance. If there is a sale by the tenant, consummated under conditions which imply such an understanding, and a portion of the proceeds is paid over to the landlord, when he is entitled to all of them, we see no reason why the landlord cannot even then retain what he gets, and immediately bring an action for the remainder. Unless he consented to such sale, or has been guilty of conduct from which the purchaser had a right to infer such consent, the latter cannot complain of an injustice in such a proceeding. The familiar doctrine that one should not be permitted to repudiate a sale made for him, or for his benefit, while retaining a part of the proceeds, has no application to this case.

Counsel for appellees refer to the following authorities as supporting the ruling of the trial court: McCollum v. Wood, 33 S. W. 1087; Planters' Compress Co. v. Howard, 41 Tex. Civ. App. 285, 92 S. W. 46; Melasky v. Jarrell, 131 S. W. 856. What has been said sufficiently distinguishes this case from the one first cited. If the testimony of the appellant is to be accepted as true, the value of the second case referred to as a precedent is destroyed. The third case is still less applicable.

The judgment of the county court is reversed, and the cause remanded for another trial.