## DAUGHERTY v. WHITE. (No. 2235.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 16, 1924.)

**1. Landlord and tenant ⬅323—Relation of landlord and tenant held created under contract.**

Contract between owner and renter, whereby renter acquired grass and farm land and was to deliver owner one-third of wheat grown thereon, *held* to create relation of landlord and tenant, and not tenancy in common.

**2. Landlord and tenant ⬅328(3)—Law implies no waiver of lien against landlord's intent.**

The law will not imply a waiver by a landlord of his lien for rent and advances against his actual intent, where there is no element of estoppel.

**3. Landlord and tenant ⬅328(3)—Consent to use of part of crop not waiver of lien.**

Consent to tenant to use part of the crop *held* not a waiver of landlord's lien.

**4. Landlord and tenant ⬅332—Burden of proving waiver of lien rested on tenant's creditor.**

Burden of proof that landlord waived his lien on crops for rent and advances *held* to rest on tenant's creditor in execution.

**5. Landlord and tenant ⬅328(3)—Taking note not waiver of crop lien.**

Taking tenant's note with security *held* not, ipso facto, to waive landlord's lien for rent and advances.

**6. Marshaling assets and securities ⬅10—Landlord's securities for rent and advances not subject to marshaling.**

Where wheat levied on by tenant's creditor was insufficient to pay landlord's claims under preference lien for rent and advances, landlord's securities therefor were not subject to marshaling.

**7. Marshaling assets and securities ⬅10—Never marshaled where third parties hold superior lien.**

Securities are never marshaled where third parties hold a superior lien.

**8. Marshaling assets and securities ⬅1—Remedy not invoked by party wrongfully levying.**

Where levy of tenant's creditor on crops on which landlord had preference lien for rent and advances was wrongful, he could not invoke the equitable remedy of marshaling securities.

**9. Marshaling assets and securities ⬅10—Remedy never applied where senior lienholder delayed or inconvenienced.**

The remedy of marshaling securities is never applied where the senior leinholder will be delayed or inconvenienced in the collection of his debt.

Appeal from District Court, Gray County; W. R. Ewing, Judge.

Action for injunction by J. M. White against George Garner and others. Judgment for plaintiff, and defendant J. M. Daugherty appeals. Affirmed.

Chas. C. Cook, of Pampa, for appellant.

I. E. Duncan, of Pampa, and Underwood, Jackson & Johnson, of Amarillo, for appellee.

HALL, C. J. The following statement by appellant of the nature and result of the suit, concurred in by appellee, is adopted:

"This suit was filed in the district court of Gray county, August 1, 1922, by J. M. White against Geo. Garner, R. B. George Machine Co., J. M. Daugherty, and E. S. Graves, in which plaintiff alleged that he was the landlord of the defendant Garner and had made certain advances as his tenant and sought to recover against said defendant Garner for the indebtedness alleged to be due him and to foreclose a landlord's lien on all the wheat raised by said defendant on lands belonging to plaintiff and leased to defendant. In said suit he prayed for a writ of injunction to restrain the defendants Daugherty and Graves, as the sheriff of Gray county, from selling certain wheat that had theretofore been levied upon by said sheriff to satisfy a judgment theretofore rendered in the county court of Gray county, in favor of J. M. Daugherty. On August 1st the district judge of Gray county granted the injunction. On March 27, 1923, plaintiff filed his first amended original petition, alleging that for the crop year beginning July 1, 1921, and ending with the harvesting of the crop in the year 1922, the defendant Garner was the tenant of plaintiff, and for such years had sections Nos. 180, 212, and 215 in block M–2, B. S. & F. surveys in said county, leased for farming and grazing purposes; that as the landlord of the defendant plaintiff White was to receive as rent one-third of the crops grown on said land; that during the term of said lease plaintiff made various advances to the defendant Garner and furnished him money, teams, tools, and supplies which were necessary to enable said tenant to properly plant, grow, cultivate, harvest, and market said crops, in the aggregate amounting to about $6,000, and that plaintiff retained a landlord's lien upon said crop as well as upon the teams, tools, and supplies so furnished; that he advanced said tenant $1,500 to purchase a tractor; that defendant owed him a note dated November 8, 1921, due August 1, 1922, providing for 10 per cent. interest and attorney's fees, which included $400.14 for wheat, $79.66 for feed, $581.00 cash, paid for the tractor. He further alleges that there was also included $1,500 advanced to the Rumely Company, from whom the tractor was purchased. He further alleges that he purchased a note from the First National Bank of White Deer, in the principal sum of $381.40, executed by defendant Garner and secured by a chattel mortgage on said defendant's two-thirds interest in 160 acres of wheat grown on the southeast quarter of section 212, and certain other personal property, which chattel mortgage was a valid and first mortgage against the property therein described; that plaintiff advanced large

sums of money at various times during the fall and summer of 1921 in order to purchase and repair machinery necessary to the planting of said crop and made large advances in money for labor, machinery, and repair, all of which items aggregated about $3,499.05; that. N. S. Locke held a valid mortgage on the wheat grown on section 215 to secure a note in the amount of $1,925, and that one C. B. Barnard held a valid mortgage on the wheat on the west half of section 212 to secure an indebtedness due him in the sum of about $3,100, and that defendant Garner's entire wheat crop amounted to about 7,000 bushels, and that the market value of the defendant's portion of said wheat crop was about $5,000; that about 1,200 bushels were raised upon the southwest quarter of section 212; that the said Graves, as sheriff, was threatening to levy an execution upon eight-ninths of the wheat then on the southeast quarter of section 212, for the collection of the aforesaid judgment in favor of the said Daugherty, against Garner in the sum of $551."

The prayer of the amended petition is that—

"The injunction be perpetuated and that Daugherty be decreed to have no lien, right, or title to said crop, and that plaintiff have judgment for his debt against Garner and foreclosure of his landlord's lien."

At the March term of the court, Daugherty answered with a general demurrer, several special exceptions, and a general denial, and further admitted that plaintiff had purchased the said $381.40 note from the bank at White Deer, described as being secured by chattel mortgage on Garner's two-thirds interest in 160 acres of wheat growing on the southwest quarter of said section 212, and further secured by a lien upon six head of horses, but denied that Barnard and Locke, or either of them, had any mortgage on the wheat that defendant Daugherty was threatening to levy upon. Daugherty alleged that he had a judgment against Garner for $551 rendered by the county court of Gray county, on the 21st day of February, 1922, which was unsatisfied, and that the defendant Graves, as sheriff, had levied upon the shocked and stacked wheat on the southwest quarter of said section 212, and would have sold the same under said execution but for plaintiff's petition for injunction; that plaintiff had possession of said wheat so levied upon by defendant, had sold the same, and converted the proceeds of the same to his own use and benefit; that said wheat was above the average wheat raised on said farm and produced about 20 bushels per acre, or a total of 3,200 bushels, and that the market value of said wheat was $1 per bushel; that Garner's part thereof was of the value of $2,130; that the money advanced by plaintiff to the Rumely Company was for the purpose of taking up the balance due said company by Garner; that said tractor was mortgaged to the Rumely Company to secure the payment of the indebtedness due them, and that upon payment of such sum the plaintiff became subrogated to all the rights, equities, and interests in and to the chattel mortgage on said gas engine, which the said Rumely Company theretofore held on account of said mortgage. It is further alleged that the $1,060 note was secured by a chattel mortgage on 160 acres of wheat, three horses, and two wagons; that after plaintiff had filed this suit during the month of November, 1922, he had had a complete settlement with Garner, in which he had accepted Garner's note for about $4,500 for all sums that said Garner then owed plaintiff but which included all the items sued on by plaintiff in his amended petition; that Garner had secured said note with a chattel mortgage on his personal property; that said note would not be due until the 1st day of August, 1923, and that at the time said answer was filed Garner was not indebted to plaintiff in any sum whatever except the sum of $4,500, evidenced by said note; that by the taking of said note plaintiff had expressly waived his landlord's lien.

Defendant Daugherty prayed for a judgment against plaintiff for the sum of $551, with interest and costs of suit; that the injunction be dissolved; that plaintiff take nothing as against the defendant Garner; and that should the court find for plaintiff then that plaintiff be required to marshal his securities and be required to satisfy his judgment, first, out of such property covered by his lien and upon which defendant Daugherty had no lien, and that Daugherty's lien be satisfied out of the property upon which the levy had been made.

The case was tried before the court without a jury, resulting in a judgment in favor of the plaintiff White against the defendant Garner, for the sum of $4,013.75, with a foreclosure of his landlord's lien. It is further decreed that the defendants Daugherty and Graves be perpetually enjoined from seizing or selling any of the wheat grown on the southwest quarter of section 212.

Among other facts, the court found that White was the owner of the three sections of land, and that "such three sections were rented by him to defendant Geo. Garner" for the purpose of raising a crop; that White was to have a one-third interest in the wheat and that the relation of landlord and tenant existed between White and Garner; that Garner was without sufficient funds, tools, provisions, and supplies to enable him to make, gather, and secure said crop; and that it was necessary for White, as landlord, to make advances to said tenant. The court then finds that $1,400 advanced for the gas engine or tractor, $400.14 advanced for seed wheat, $79.66 advanced for feed for the work stock, $81.50 for groceries furnished said tenant, $918.50 paid for labor and expenses for harvesting and threshing

the wheat, $755.75 expended in the purchase of repairs, parts, and for labor and materials in repairing and placing in good condition the tools and machinery used by Garner in making the crop, aggregating $3,635.55, were all necessary expenditures, and were such supplies and items which under the statute entitled the landlord to have a lien to secure the repayment thereof, and that such amounts were reasonable and necessarily expended in the business of raising said crop. The court further found that. Garner raised 7,000 bushels of wheat, an undivided one-third interest of which was due White as rent; that the whole of said crop was subject to the landlord's lien for rent and advances. The court further found that White, as the assignee of a $381.40 note, originally held by the Bank of White Deer, and secured by a chattel mortgage upon the wheat grown on the southeast quarter of section 212, held a superior lien to that created by the levy of the execution; that Garner had executed his note to one Barnard in the sum of $3,150, secured by a chattel mortgage on part of his crop, and had executed a note to one Locke for $1,925, secured by a chattel mortgage on part of his crop grown upon the lands leased from White.

The court further found that Daugherty had obtained a judgment against Garner for $551 and costs; that a writ of execution had been issued upon said judgment and placed in the hands of Graves, the sheriff of Gray county, who had levied the same upon Garner's interest in eight stacks of wheat and certain wheat still in the shock grown on the southeast one-fourth of section 212, and in a field containing about 120 acres; that Garner's interest in the wheat levied upon was $750, and that at the time the levy was made, on July 20, 1922, the entire crop was subject to White's landlord's lien to secure rents and advances; that of the 7,000 bushels of wheat raised by Garner during that year he had sold and disposed of about 2,000 bushels prior to the levy of the writ, had paid plaintiff his one-third as rent, and had appropriated the money received from his interest in said 2,000 bushels to his own personal use, paying to Barnard $700 and to Locke $600; that the value of the wheat unsold on July 20, 1922, at the time the execution was levied, was $3,500, and after deducting the rents due White, Garner had not repaid White anything for advances and was indebted to the latter for such advances in the sum of $3,635.55; that he was further indebted to White in the sum of $406, the amount of the note and interest which White had acquired from the Bank of White Deer, and which was secured by chattel mortgage upon all of Garner's interest in the wheat grown on the southeast quarter of section 212; that Garner was further indebted to Barnard and Locke in

an amount approximating $4,000, secured by chattel mortgages on all other wheat raised by him subject to the landlord's lien, but that said chattel mortgage liens were prior and superior to any claim or interest of Daugherty; that Barnard and Locke were theatening to require plaintiff, at the time defendant Daugherty's execution was levied, to marshal his securities and exhaust other property toward the settlement of the claim secured by his lien before appropriating. any of the wheat subject to their mortgage lien, and that to permit defendant Daugherty to levy upon any such wheat would have subjected the plaintiff White to litigation, expenses, and delay in the collection of his indebtedness from his tenant, and for such reason, even if there existed any balance due the tenant after paying plaintiff's claims, the said Daugherty would have no right to require White to marshal his securities. The court further found that J. M. White's claim of $3,635.55 constituted a valid and subsisting lien against all the wheat crop raised on the entire three sections, and that he was entitled to be paid prior to the payment of any amount to Daugherty; that the chattel mortgages acquired from the Bank of White Deer and those held by Barnard and Locke were duly registered and constituted prior and superior liens to any acquired by Daugherty; that the amount of advances made by White to Garner, and for which he had a landlord's lien, was greater than the value of the wheat crop on hand at the time of the levy of the execution, under which Daugherty claims; that no such equities existed in favor of Daugherty as would entitle him to require White to marshal his securities. Further facts are found which we deem it unnecessary to state.

Plaintiff's petition sets out items which correctly added aggregate $4,214.90, but in stating the amount due the petition alleges it to be "about $3,499.05," showing that the pleader has erred in adding the items. Based upon this fact, the appellant insists that the court erred in rendering judgment in the sum of $4,013.75. This contention is without merit.

The next insistence is that the undisputed proof showed that at the time of the trial defendant Garner was not indebted to plaintiff in any amount whatever. On the contrary, the evidence is undisputed that after the suit was filed White and Garner had an accounting and an adjustment of their matters, and it was shown that Garner owed White $4,500 for which sum Garner had executed to White his note. This note represented the unpaid balance due White for rent and advances.

[1] The next contention is that under the terms of the contract White and Garner are tenants in common and that the relation of landlord and tenant did not exist. The

only evidence which bears upon this question is from Garner. It appears that the contract between them was in writing; but, without objection, he testified as follows:

"I first leased the grass on Mr. White's land in the fall of 1919, and the farm in the fall of 1920, and have been on the place continuously since then. I leased from Mr. White about 80 acres of farming land at that time and 4 or 5 sections of grass. In addition to the farming land, I also grazed most of the land I received under the contract with Mr. White up to the time these advances were made. The contract I originally had with Mr. White for the leasing and renting of these lands was a written contract which is now at my home—do not have the contract here with me. The contract provides for me to have the land for a number of years and provides how the crops are to be divided, viz.: One-third of the grain delivered in the stack or shock so that during the time I have been on this land under my trade with Mr. White two-thirds of the wheat belonged to me and the other one-third to him; in other words, he owned unconditionally an undivided one-third interest of all the wheat raised under that contract with him, and I, under the contract, was to deliver the wheat in the stack or shock, and I was to pay for the hauling of my wheat to town or market, and he to pay for his hauling."

This evidence does not show that Garner was a mere cropper. White lived in Amarillo and Garner lived upon the rented premises and had the possession thereof during the term of his lease. The facts show that he furnished more than his labor in carrying out the contract. He testified that he leased the land, thereby expressing the intention of the parties in entering into the contract. We think that unquestionably the relation existing between White and Garner was that of landlord and tenant. Turner v. First National Bank (Tex. Civ. App.) 234 S. W. 928; Small v. Rush, 63 Tex. Civ. App. 126, 132 S. W. 874; McCullough Hdwe. Co. v. Call (Tex. Civ. App.) 155 S. W. 718.

The plaintiff White testified:

"This is a friendly suit as far as Garner and myself are concerned. I have made settlement with Garner for his note for all that he owes me at this time, and I have accepted that in the past in settlement of any amount he might owe me, and this is a suit brought by me against Garner to eliminate any claim Daugherty might have by virtue of the lien on that wheat."

He further testified that—

This suit was not to try to keep Daugherty from getting the wheat; that he had collected all he possibly could from Garner and did not have his lien or try to keep from collecting any of it from Garner. "These notes I speak of as being taken and renewed for the balance were taken after the crop was ended up, and I got all the money I could and made the best settlement I could get out of him, and I did not take any renewal note or anything of the kind until I had gotten all the money I could out of the crop. It was along late in the fall, as I

remember it, when we made the final settlement wherein he owed this $4,500; that is in the fall of 1922, after this suit had been filed; but I claimed at the time of filing this suit that Mr. Garner then owed me something like $3,600 for advances made. I could not give the exact date when I took Mr. Garner's note for what he owed me in 1922, but it was after the wheat hauling and after these settlements were made with the other parties. I suppose the records here will show the date of the note and mortgage. Anyway, in the fall of 1922 Mr. Garner and myself had an accounting—struck a balance—and I took a note for what he owed me, and he gave whatever security he could, the same being for $4,500 and some odd dollars."

[2-5] Thus it appears, from this and other testimony, that White had not accepted the note for $4,500 and the security, the character of which is not shown from Garner, with any intention of releasing his lien. On the contrary, the note is simply a statement of the amount of indebtedness due at that time. The law will not imply a waiver against the landlord's intent where there is no element of estoppel. Adams v. A. A. Paton & Co. (Tex. Civ. App.) 173 S. W. 546. White's consent for Garner to use part of the crop was not a waiver of the landlord's lien. Johnston v. Kleinsmith, 33 Tex. Civ. App. 236, 77 S. W. 36. The burden of establishing that White waived his lien by accepting Garner's note with security is upon Daugherty. Adams v. A. A. Paton & Co. supra. Merely taking the note with security does not, ipso facto, waive the lien. Coleman v. Siler, 74 Ala. 435; Denham v. Harris, 13 Ala. 465; Sullivan v. Ellison, 20 S. C. 481; Trimble v. Durham, 70 Miss. 295, 12 South. 207; Merchants' & Planters' Bank v. Meyer, 56 Ark. 499, 20 S. W. 406.

It is apparent from all the evidence that when White testified that this was a friendly suit as between himself and Garner, he meant that Garner contested neither the amount of his claim nor his right to foreclose his landlord's lien. It is further apparent that when he said he had settled with Garner, he meant that they had arrived at a statement of the amount due. If his lien was about to be defeated by the levy of Daugherty's execution, he had the right to file suit, have the priority of his lien established, and thus "eliminate" Daugherty's claim.

[6-9] The court did not err in holding that White's securities were not subject to marshaling. The burden was upon Daugherty to show his right to the application of this remedy. And we may reasonably infer from the court's finding that taking into account the wheat levied upon, there was not enough on hand to pay White's claims. We may also infer that Locke and Barnard each had a chattel mortgage on the wheat grown upon the southeast quarter of section 212. Securities are never marshaled where third par-

ties are holding a superior lien. Keasler v. Wray (Tex. Civ. App.) 171 S. W. 534. But aside from this consideration, White had a preference lien upon the entire crop to secure the whole amount due him for rents and advances. Daugherty, by levying his execution, set up an adverse claim. His levy was to that extent wrongful, and he cannot invoke the equitable remedy of marshaling securities. He must come into equity with clean hands. Morever, the remedy is never applied where the senior lienholder will be delayed and inconvenienced in the collection of his debt. Wilkes v. Adler, 68 Tex. 689, 5 S. W. 497; Fields v. Fields (Tex. Civ. App.) 216 S. W. 195; Taliaferro v. Bank (Tex. Civ. App.) 209 S. W. 174; 5 Pom. Eq. (4th Ed.) §§ 2288, 2289, 2290.

The evidence is sufficient to sustain the court's finding that supplies and advances to the value of $3,635.55 had been furnished by White and that they were necessary to enable Garner to make a crop upon the leased premises.

Several chattel mortgages are mentioned by those who testified, but neither the mortgages themselves nor a statement as to the facts they established are shown in the statement of facts, as is required by District and County Court Rules 72 and 73, so we must presume that the instruments themselves are in accord with the brief statement of them given by the witnesses and that they sustain the findings and the judgment.

The propositions not specifically discussed are without merit and are overruled.

Finding no reversible error, the judgment is affirmed.